Bronson *v.* Rugg.

---

### WILLIAM H. BRONSON *v.* BENJAMIN F. RUGG.

#### *Payment. Contract.*

The rule recognized that a payment made upon an existing debt cannot be recovered back by suit by the party making it, even though judgment be taken and collected for the debt, without applying and deducting said payment.

The defendant sold a lot of pelts for the plaintiff, and before the defendant received the pay for them, the plaintiff told him that he, the plaintiff, did not want the money for them, but wanted it applied on a note which the defendant held against him, and the defendant said "very well," or "all right," but did not so apply it, and afterwards took a judgment on the note and collected it in full, and the plaintiff then brought this action for the pelt money. *Held,* that if the defendant, on receiving the money, had actually applied it as requested, it would have become payment on the note; but having given it a different direction, the understanding between the parties was not binding as an agreement so as to make the money a payment on the note in spite of the defendant's misappropriation of it; therefore the plaintiff was entitled to recover.

ASSUMPSIT. Plea, the general issue, and trial by the court, September Term, 1866, WILSON, J. presiding.

It appeared that the plaintiff in March, 1861, owned seventy pelts. The defendant owned a quantity of pelts, and at the request of the plaintiff the defendant took the plaintiff's pelts and sent them to market with the defendant's pelts. A short time after the pelts were sent to market the defendant told the plaintiff he had got returns from the men to whom the defendant sent the pelts. The plaintiff then asked the defendant what his (the plaintiff's) pelts " came to." The defendant said they came to $47.25, and the defendant then told the plaintiff that he (the defendant) had not received the money for the plaintiff's pelts. The plaintiff testified : " I told him I did not want any money. He held a note against me, and I told him I wanted the money to apply on the note. The defendant said very well," or "all right." The plaintiff on cross-examination testified that he agreed that the money for the pelts might be applied on the note, but there was no testimony tending to show any conversation between the parties in relation to an application of the money on said note, except the conversation above detailed.

It appeared that some time after the interview above detailed, the defendant sued the note he held against the plaintiff, obtained judgment and took out execution thereon against the plaintiff. Just before the execution expired the officer holding it called on the plaintiff for payment. The plaintiff inquired as to. the amount of the execution, and finding it larger than he expected, went to see the defendant and asked him what he had done with the pelt money, why it was not on the note. The defendant then asked the plaintiff if he did not understand that he had a ninety dollar note against the plaintiff. The plaintiff replied that he did not know that the defendant held any such note against him. The defendant did not show said note to the plaintiff, and there was no evidence before the court that the defendant held a note against the plaintiff, except the note he sued and obtained judgment on. The defendant then showed to the plaintiff the defendant's account against George Bronson, a son of the plaintiff, on which the defendant had credited the money received for the pelts. The plaintiff asked the defendant why he credited the

money to George. The defendant replied : " I have done it." The plaintiff then went and paid the execution and commenced this suit. The defendant never applied the money he received for the pelts on any claim he held against the plaintiff. It appeared that the defendant received the money for the plaintiff's pelts.

Upon the foregoing facts the court rendered judgment for the plaintiff,—to which the defendant excepted.

*H. S. Royce,* for the defendant.

The case finds that the proceeds of the pelts sued for, were by the agreement of the parties to apply on the note which the defendant held against the plaintiff. No account of the pelts or the proceeds was made by either party, nor was anything left for future adjustment, and hence the action cannot be sustained. *Peach* v. *Mills*, 14 Vt. 371 ; *Slasson* v. *Davis et al.*, 1 Aiken, 73 ; *Stevens* v. *Tuttle*, 3 Vt. 519.

*Bailey & Davis*, for the plaintiff.

The exceptions do not show facts constituting a payment on the note. The language of the parties would hardly amount to an agreement to apply, but conceding this, the agreement was executory and the matter being left for subsequent adjustment and application, the case is brought directly within the reasoning of the court in *Strong* v. *McConnell*, 10 Vt. 231 ; *Chellis* v. *Woods*, 11 Vt. 468 ; *Conn. & Pass. R. R.* v. *Newell*, 31 Vt. 371 ; *Cary* v. *Bancroft*, 14 Pick. 315 ; *Rowe* v. *Smith*, 16 Mass. 306 ; *Wright* v. *Leonard*, 4 Gray 149 ; *Corey* v. *Gale*, 13 Vt. 645.

The opinion of the court was delivered by

BARRETT, J. This court recognize the settled rule of law, that a payment made upon an existing debt cannot be recovered back by suit by the party making it, even though a judgment be taken and collected for the debt, without applying and deducting such payment. If the present case falls within that rule, it must be subjected to its operation, and the plaintiff cannot recover, however glaring the dis-

honest trick by which a knave may get twice over the money of his confiding victim.

The question therefore is, whether it is shown by the exceptions, that the money received for the pelts was, in the hands of the defendant, a payment on the note he held against the plaintiff. The evidence bearing on this subject is detailed, but it is not stated how the court found the fact. It is to be inferred from the rendition of judgment for the plaintiff, that the court did not find the fact of payment. If the court were warranted in not finding that fact, then the judgment was correctly rendered,—if not thus warranted, then the judgment must be reversed, although it should accord success to dishonesty.

It is to be noticed that the defendant became the factor of the plaintiff to sell the pelts and to receive the money therefor; and the money would, in any event, come into the hands of the defendant as such factor, charged with a trust and accountability, unless that character was changed by some new agreement that operated upon both parties. After the pelts had been sold, the defendant informed the plaintiff of the fact; whereupon the plaintiff said to the defendant that he did not want the money—he was owing the defendant a note on which he wanted it to apply; and it seems that the defendant elicited on cross-examination of the plaintiff as a witness, that the plaintiff agreed it might be applied in payment on said note.

Did the defendant agree that he would apply it, so as to bind both parties at and from the time of such agreement? All that is shown to have occurred prior to the receipt of the money by the defendant, is, that when the plaintiff told the defendant he did not want the money, but wanted it applied on said note, the defendant said " very well," or " all right;" and the exceptions state that no other conversation on the subject was shown to have taken place between the parties. It is plain that what was thus said by the defendant might be construed to be an assent to the proposition and wish of the plaintiff; but it was not in terms, nor necessarily by construction, so a promise on his part as to bind him thus to apply it, and bind the plaintiff to have it thus applied. There was no new

consideration passing between the parties, and, at any time before the application in fact, it would have been competent for the plaintiff to countermand such destination of the money, and require it to be paid over to himself. It was equally competent for the defendant to disregard the understanding. It stands differently from the case in which a party delivers money or other property into the hands of his creditor as payment, and it is received as such. The very act operates a payment *eo instanti.* In this case the money was to come into the defendant's hands any way, and its destination was subject to the supervening agreement and acts of the parties. If the defendant, on receiving it, had actually applied it, it would have become payment on the note; but not having applied it, and having given it a different direction, the question is, was the understanding between the parties of such a binding character as an agreement, as to make the money a payment on the note in spite of the defendant's misappropriation of it, in violation of the agreement which he now sets up as a shield to his dishonesty, and so binds the plaintiff as to estop him from claiming and recovering his money wrongfully held by the defendant? We think, upon the evidence and facts stated in the exceptions, in order to transfer the property in that money from the plaintiff to the defendant, so that the defendant can hold it as his money, without accountability, he should have applied it on the note. If the plaintiff was bound to have it so applied, the defendant was equally bound to apply it. As the defendant repudiated the understanding as an agreement before it became consummated by the application of the money on the note, of course he can claim nothing from it as against the plaintiff. It seems to us that the county court were justified in not finding the fact of payment, and in rendering judgment for the plaintiff, on the grounds already set forth.

There is another ground presented by the exceptions which is conclusive in favor of the judgment. Until the money had been received by the defendant, it could not become payment. As he defends himself on the ground that the money had become payment on his note at the time he recovered his judgment on it, the burden was on him of showing that in fact he had received the money before

he took said judgment. That was not shown, nor is there any thing in the case tending to show it. It is sometimes not unpleasant in the affairs of men to witness an illustration of the practical sense, if not the divine wisdom of the scripture proverb, that " The wicked is snared by the transgression of his lips, but the just shall come out of trouble."

The judgment of the county court is affirmed.