# APPENDIX

## Notes of Cases Not Otherwise Reported.

M. H. DILENBECK, Appellant, v. WILHELM AND AGUSTA REHSE.

PRINCIPAL AND AGENT. An agent has no authority to accept an installment of principal on a note more than two years before its maturity and more than one year before the date at which the maker has the option to pay it; and a payment made by the maker to the agent is not binding upon the principal, where the principal had consented to its payment on the condition that he should have notice before it was paid, which condition was not observed.

*Apparent authority.* An agent authorized to collect interest coupons and installments of the principal, has implied authority to accept payment before maturity, where the principal has been accustomed to forward coupons and insist upon the prompt payment of such coupons, and of the installments of principal, long before their maturity.

*Appeal from Ida District Court.*—HON. Z A. CHURCH, Judge.

FRIDAY, JANUARY 28, 1898.

ACTION to foreclose a mortgage to which the defendants interpose the plea of payment. Decree for the defendants, and plaintiff appeals.—*Reversed.*

*Homer S. Bradshaw* for appellant.

*Warren & Johnson* for appellees.

LADD, J.—The question of fact in this case is whether Cox & Co. was agent for the plaintiff at the time the defendant Rehse paid that firm for him one thousand and thirty-three dollars and seventy-five cents, to be applied in satisfaction of a mortgage executed December 26, 1890, by defendants to the plaintiff, to secure the payment of a bond of two thousand dollars, with ten interest coupons attached, payable semi-annually. It provided for optional payments of one

(749)

hundred dollars, or any multiple thereof, on the principal, on January 1st of any year; but, on the sixteenth of the following month, the parties made a separate contract, by which these payments were limited to three hundred dollars or five hundred dollars, of which thirty days' notice was required. The loan was negotiated through J. E. & W. C. Weaver, to whom Rehse paid the amounts due on interest coupons till some time in 1892, and also five hundred dollars on the principal, which was indorsed January 4th. The Weavers were succeeded by Cox & Co., to whom Rehse paid the interest up to December, 1893, when the sole member of that firm absconded. He also paid Cox & Co. five hundred dollars, to be applied on the principal, which was indorsed by the plaintiff in January, 1893. Each of these payments was made about a month before maturity. On November 15, 1893, Rehse also paid Cox & Co., to be sent to the plaintiff, one thousand dollars on the principal and the interest coupon payable January 1, 1894. Did Cox & Co. receive these payments as agent of the plaintiff? Arnett, to whom Dilenbeck transferred the mortgage as soon as he learned Cox had gone, began foreclosure proceedings, which he afterwards dismissed, though not till plaintiff's deposition had been taken. A part of this deposition was introduced in evidence, showing certain admissions, including his testimony that Weaver Bros. made most of his loans while they were in business, and that he "had an arrangement with them by which they were to collect for me, and remit without charge. After they were succeeded by Cox & Co., I had the same arrangement with them that I had with Weaver Bros." He wrote to Cox & Co. to learn if they proposed "to carry out the contracts of Weaver Brothers as to collecting and remitting loans made by them free of charge." Later he advised the firm, in explanation of having sent some coupons to his brother, that "I prefer you to feel responsible and look after the loans made by you; hence I shall do different, and send direct to you." Other letters show that plaintiff sent interest coupons to the firm before maturity for collection, and insisted, before maturity, on prompt remittance of payments on principal if made by Rehse. He asked Cox & Co. to have Rehse notify him of any intended payment as long beforehand as possible, and in December, 1892, wrote: "If he wishes to pay $500 on the principal in addition to his coupon, then let the remittance be made promptly." In his deposition he admits he knew of Rehse's desire to pay in full five or six weeks before he received the letter from Cox & Co., of November 21, 1893, asking if he would accept payment, and to which he answered the next day: "If I may have the assurance soon that he will pay the loan in full, then I will take it on January 1, 1894." The plaintiff claims to have destroyed all letters received by him, and denies he ever authorized either firm to collect for him; but the deposition and the letters referred to and the course of dealing shown seem more trustworthy, and from these no other inference can be drawn than that Cox & Co. were fully authorized to insist on payments and

interest about to mature, and to receive and transmit the same. It would be limiting such authority to too narrow a scope to say that these could not be received till the day due and thereafter. The agent had the right to accept money when those owing it would, under the circumstances disclosed, be likely to pay; and the fact that plaintiff forwarded coupons, and insisted on prompt payment of the principal, through the agent, weeks before maturity, indicates that he intended the agent to receive the money when offered. It follows that the agent had authority to receive payment of the interest coupon and five hundred dollars of the amount paid. But the remaining five hundred dollars was not due till January 1, 1896; nor had Rehse the right to pay it under his contract before January 1, 1895. The plaintiff had not given his consent to its payment when Rehse paid it to Cox & Co., and had no response to his requirement that he have notice if it were to be paid in full. It is said that the contract limiting the amount the mortgagor might pay is without consideration, and for this reason not binding. But neither party made any such claim, and Rehse, in attempting to obtain Dilenbeck's consent, treated it as valid. Cox & Co. were advised by the plaintiff of the terms of the contract, and nothing in the record indicates an intention to authorize that firm to accept more on the principal than therein agreed. Judgment and decree should have been entered for five hundred dollars, with interest from January 1, 1894.—REVERSED.