EDWARD D. POCHIN, APPELLANT, V. FRANK KNOEBEL ET AL., APPELLEES.

FILED FEBRUARY 6, 1902. No. 9,766.

Commissioner's opinion, Department No. 1.

1. **Promissory Note:** COLLECTION: AGENCY OF ASSIGNOR: PAYMENT: BONA-FIDE HOLDER FOR VALUE. Where one purchasing a note, constitutes his assignor, who is the original payee named therein, his agent for the collection of both interest and principal, and such agent, in the exercise of such authority, does collect both interest and principal, the holder can not, after his agent's failure to account, repudiate such agency, stand upon his rights as a bona-fide holder for value, and collect a second time from the maker, although the latter has paid the agent in the belief that he was still the holder of the note.

2. ──────: ──────: ESTOPPEL: SATISFACTION OF DEBT. If the maker pay other than the rightful owner of the note, he can not rely on facts unknown to him and not influencing his action, as an estoppel; but, if the money has reached the hands of an agent authorized to collect for the holder, such payment will be held a satisfaction of the debt.

3. **Evidence:** FINDING. *Held*, That the finding of the trial court that the maker paid to the authorized agent of the holder is sustained by the evidence.

APPEAL from the district court for Antelope county. Heard below before ROBINSON, J. *Affirmed.*

*Charles Riley and C. C. Flansburg,* for appellant.

*N. D. Jackson, contra.*

KIRKPATRICK, C.

This is a suit brought in the district court of Antelope county by appellant against appellee to foreclose a mortgage made by Frank Knoebel and wife to the Globe Investment Company of Boston, Mass. The petition alleges the execution and delivery of the note and mortgage by Knoebel and wife to the investment company; that soon afterwards the latter sold the note and mortgage to John Stuart & Co., Limited, who in turn sold them to appellant,

both of which sales occurred shortly after the execution of
the note and mortgage. The answer of appellee Rehberg
admits execution and delivery of the note and mortgage and
its sale as alleged; and alleges that on October 17, 1891,
he purchased the land in question from Knoebel and wife,
assuming the mortgage; that he paid the interest coupons
from time to time as they matured to the investment com-
pany, and that shortly before the maturity of the note, he
paid the principal and interest remaining due to the in-
vestment company, the payee named in the note and mort-
gage, without any knowledge that the investment company
had parted with its title; and alleged that the investment
company was duly authorized by appellant to collect both
principal and interest on said loan; and that not only was
the investment company the agent of appellant for the col-
lection of principal and interest, but that appellant know-
ingly held out to appellee that the investment company
was authorized to make such collection, and that it had
ostensible authority for the same, and that the note in suit
was non-negotiable. To this answer appellant filed a gen-
eral denial. Trial was had to the court, which resulted
in a finding and judgment that the note and mortgage had
been paid by appellee, and that the investment company
was authorized by appellant to collect and receive both
principal and interest on said loan. From this decree, ap-
pellant, owner of the note and mortgage, appeals to this
court.

It is disclosed by the record that on January 8, 1889,
Knoebel and wife executed to the Globe Investment Com-
pany, a Massachusetts corporation, a note and mortgage
for $800, maturing January 1, 1894, payable at the office
of the mortgagee in Boston; and on October 17, 1891,
Knoebel and wife sold the land to appellee Rehberg, sub-
ject to this mortgage. Within a month or two after ob-
taining the note and mortgage, the investment company
sold and delivered them to Stuart & Co., Limited, a cor-
poration located at Manchester, England, and this com-
pany shortly afterwards sold the note and mortgage to

53

appellant, also a resident of England. No assignment of the mortgage was ever placed of record in Antelope county. Appellee, after purchasing the land, paid all the interest coupons as they matured to the investment company, making the remittance by their direction to the Kansas City office of that company. It seems from the evidence that appellant forwarded the coupons from time to time as they matured, through John Stuart & Co., Limited, to the investment company. It collected the coupons and sent them to appellee, and paid the money to John Stuart & Co., Limited. Some six or eight months before the maturity of the loan, appellee wrote to the investment company that he desired to pay off the note and mortgage. The company replied that, if he would pay the interest which would accrue up to the maturity of the note, the money would be accepted, and the note and mortgage satisfied. Accordingly, in June of 1893, appellee sent a draft for $800, and enough more to cover the unpaid interest coupons maturing July 1, 1893, and January 1, 1894, to the investment company at Kansas City, and on June 19, 1893, that office credited the home office at Boston with the payment, and the latter office marked the note and mortgage paid. Appellee was sent a receipt for this money, notifying him that the money was received, that the note and mortgage were in the east, and as soon as received they would be forwarded to him. Some time later, appellee again wrote, asking for the note, and received substantially the same answer. He never received the note and mortgage, or a release of the mortgage. It is disclosed by the record that the investment company was a corporation located in Boston, and organized for the purpose of negotiating loans upon real estate, and selling the same throughout the eastern states and Europe. It advertised very extensively that upon all loans negotiated by it, it collected both principal and interest, and paid taxes without any expense to the persons who purchased such loans from it. It is also disclosed that in all cases, the purchasers of the loans relied upon this agreement and under-

standing, and never corresponded or had dealings with the mortgagors, but looked directly to the investment company for the collection of both principal and interest, and depended upon that company to keep properties insured, and renew policies of insurance, and foreclose mortgages when deemed advisable by the company. It is shown by the testimony that the investment company used its own discretion in the manner and time of the collection of principal and interest; and whenever, in the judgment of the officers of that company, it was necessary to foreclose a mortgage, it proceeded at once to do so upon its own authority, bringing the greater number of foreclosures in the name of J. Lowell Moore, who was, during the last few years of the company's existence, its treasurer. The testimony further discloses that John Stuart & Company, Limited, purchased loans of the investment company to the amount of $1,500,-000. A part of these loans was retained by it, but many, including the note and mortgage in suit, were sold to its customers in England. Stuart & Co., Limited, entered into a contract with the investment company, by the terms of which the latter company agreed to pay the former a two per cent. commission on all loans purchased by Stuart & Co., whether retained by it or sold to others, and, in addition, contracted and agreed to collect both principal and interest on the loans purchased; and to pay all taxes and look after all insurance and foreclosures free of expense to Stuart & Co., Limited, or its clients. It is further disclosed by the evidence that Stuart & Company, had full knowledge of the manner in which the investment company transacted its business; that the former company and its clients held twenty per cent. of the capital stock of the investment company; that its officers very frequently visited the offices of the investment company, examined its books, had access to its records, talked with its clerks, made suggestions and gave advice as to the manner of collecting both principal and interest and with reference to the foreclosure of mortgages and when such foreclosures should be undertaken. Stuart & Co. was in a

position to know, and evidently did know, all about the
condition of the mortgages it had purchased from the in-
vestment company, and knew what the investment com-
pany was doing in the way of collecting both principal and
interest. The custom of the investment company was to
notify the mortgagor about thirty days before the ma-
turity of his coupon, telling him to forward the money
so that it would reach the office of the investment
company before the day of maturity. Stuart & Com-
pany, Limited, would then send the coupons generally
so that they were in the hands of the investment
company at the time of their maturity. If the money
had not been received by the investment company at
the time it received the coupons at maturity, it fre-
quently paid them to Stuart & Co. before their collection.
About six months prior to the maturity of the loan the in-
vestment company would notify the borrower of the date
when the loan matured, and would ask him whether he
would be able to meet it on that date. If he replied that
he was not able to do so, the company would then inquire
whether he could not reduce the principal. In some in-
stances the loans were renewed, and in others they were
foreclosed. Appellant purchased the note and mortgage
in suit from Stuart &. Co., Limited. Whether he retained
them in his possession, or whether they were retained by
Stuart & Co., is not disclosed, but it does appear that
Stuart & Co. forwarded the coupons for collection from
time to time, as they matured, to the investment company.
Some time about January 1, 1895, Stuart & Co. became
alarmed as to the financial condition of the investment
company, and insisted on some one being named in the
United States to whom coupons and notes could be sent by
it for presentation to the investment company as they
matured. By mutual agreement between the investment
company and Stuart & Co., Kidder, Peabody & Co., of Bos-
ton, were selected as agents of Stuart & Co., and thereafter
all coupons and notes which had been negotiated by Stuart
& Co., were sent to this firm for presentation. Kidder,

Peabody & Co. would present them at the office of the investment company for collection, but had no correspondence with the makers of the notes and mortgages, and they made no other attempt to collect. With the exception stated, the business between the investment company and Stuart & Co. was transacted in the same manner as it had been for years theretofore. This arrangement, by which Kidder, Peabody & Co. were to act as the agents of Stuart & Co., seems to have been made about January 1, 1895. Appellee had paid off his loan about June, 1893, so that the appointment of Kidder, Peabody & Co., as agents of Stuart & Co. in this country would be wholly immaterial in the case at bar, provided appellee was authorized or justified in paying the money to the investment company at the time he did in June, 1893. As has been stated, the contract between the investment company and Stuart & Co., as disclosed by the evidence, was that the investment company should collect both principal and interest of all loans which had been sold to Stuart & Co., look after insurance of properties, etc., free of all expense to Stuart & Co., and, in addition to that, a cash commission of two per cent. was paid to Stuart & Co. The loan in suit was purchased by Stuart & Co. under, and was controlled by, this agreement.

There is probably no question or doubt that appellant, when he purchased the note and mortgage, did so subject to this contract, and fully understood its terms, and understood and expected that collection of both principal and interest would be made free of expense to him. The record is silent upon this question, except as to what inferentially appears from the fact that Stuart & Co. collected his coupons, and also had charge of, and attempted to collect, the principal of the loan. During all of the time that Stuart & Co. were collecting these coupons for appellant, as has been heretofore stated, they had full knowledge of the manner in which the investment company was transacting its business, and of the fact that it was holding itself out to all borrowers as possessing full authority to collect both

principal and interest; that it had authority to renew loans, to collect or accept payment of notes and mortgages at or before maturity, to foreclose mortgages on default of interest payments or at maturity, and as having charge of all loans as fully and completely as if it was still the owner of them. This knowledge of Stuart & Co., who were, beyond doubt, agents of appellant, was knowledge to appellant, their principal. "It is well settled that the knowledge of the agent in respect to the subject-matter of the agency is the knowledge of the principal." *Lakin v. Sierra Buttes Gold Mining Co.*, 25 Fed. Rep., 337; *Sterling Bridge Co. v. Baker*, 75 Ill., 139; *Hier v. Odell*, 18 Hun [N. Y.], 314; *National Life Ins. Co. v. Minch*, 53 N. Y., 144; *Ward v. Warren*, 82 N. Y., 265; *Ingalls v. Morgan*, 10 N. Y., 178; *Slater v. Irwin*, 38 Ia., 261; *Rogers v. Palmer*, 102 U. S., 263. Again, Mason and Moore, two of the chief officers of the investment company, testified that they had direct authority from appellant to collect both principal and interest of this loan. It is true, that the evidence of these witnesses is largely in the nature of conclusions, which in themselves would have little probative value, and would not establish their right to collect; but, taken into consideration with all the other facts and circumstances disclosed, and especially with reference to the letter which the record discloses appellant himself wrote to the investment company, are sufficient in this case. Appellant wrote to the investment company as follows: "Manchester, 29 Oct. '94. Globe Investment Company, Boston. Gentlemen: I am very anxious about the amount of loans and you will please let me know fully as to what immediate prospect there is of the collection of each, and also of the final result of their being received: Knoebel, 5,4611, Prin. due Jan. 1st, '94, $800.00. Coupon July 1st, 1894, $28.00. Awaiting your early reply, I am, Yours Very Truly (Signed.) E. D. Pochin." To this letter the investment company replied:—"January 25, 1895. E. D. Pochin, Esq., Salford, Manchester, England. Dear Sir:—Replying to yours of October 29th, we beg to report

on your loans as follows:—No. 5,4611. Knoebel, $800.00. The borrowers have paid their interest promptly up to maturity, but we are unable, as yet, to report collection of the principal. Trusting the above reports will cover the ground satisfactorily, we are, dear sir, Yours Very Truly, Globe Investment Company, (signed). By Allison Z. Mason, President." At the time Pochin wrote the letter quoted and at the time the investment company sent the answer set out, it had in its possession the full amount of principal and interest paid by appellee on this loan in June, 1893, more than a year prior to the correspondence. The letter of appellant to the investment company shows indisputably that at that time he regarded the company as his agent for the collection of both principal and interest. This uncontradicted fact, taken in connection with other facts, viz., that appellant was a resident of a foreign country, unable personally to look after the collection of his debt, and, in the nature of things, required to look to and rely upon an agent in this country ; also, that the investment company, as shown by the record, had a course of dealing by which it guaranteed to its clients abroad the collection of principal and interest,—make a case of agency between the appellant and the investment company so conclusive that it is not possible to adopt any other view. It appears from the evidence and from what has been said, that the investment company was authorized to collect the principal and interest of the note on account of the contract between it and Stuart & Co., Limited; of which contract appellant had actual knowledge, and under the terms of which he purchased the note and mortgage in suit. It seems equally clear from the evidence that the investment company was authorized and empowered by appellant to act as his agent for the collection of both principal and interest. Under either or both of these conditions, the investment company was authorized to collect, and, being so authorized, it follows that appellee was guilty of no negligence in paying to the party actually authorized to collect, notwithstanding the note and mortgage were not yet due.

It is contended by counsel for appellant that appellee can not invoke the doctrine of estoppel, for the reason that when he made the payment he did not know and never had heard of appellant, and believed and supposed that the investment company was still the owner of the note and mortgage; and that, not having knowingly relied upon any act of appellant upon which an estoppel could be based, can not be heard in this case to invoke the principle. With this as an abstract principle we find no fault; and yet it has no application to the case at bar. We are unable to see upon principle what difference it makes whether appellee paid to the investment company on the assumption that it was the owner of the paper or simply an agent authorized to collect. The only question in the case is, did the money reach the hands of the person authorized to receive it? Whether that person received it on his own account or in the capacity of an agent would seem to be wholly immaterial. The money having reached the place of payment, and coming into the hands of the person authorized to collect it, it would seem that there could be no doubt that this would operate as a satisfaction of the note and mortgage. This doctrine is recognized in apt language in the case of *Exchange Nat. Bank v. Johnson,* 30 Fed. Rep., 588, in which it is said: "If the maker pay other than the rightful owner of the note, he can not rely on facts unknown to him, and not influencing his action, as an estoppel; but if the facts be of a character that establish an agency for collection, that is a defense against repayment." The trial court found that: "The said Globe Investment Company, for and on behalf of plaintiff, transacted all the business with reference to the collection of the principal and interest of the debt evidenced and secured by the note and mortgage in suit. * * * The court further finds that on loans so negotiated and sold, the Globe Investment Company acted as the agent of the investors in the collection of the principal and interest of such loans, and in the care and protection of the securities, and dealt with all such loans and securities in the collec-

tion, care and management thereof as to the said Globe Investment Company seemed advisable.  *  *  *  The court further finds that the plaintiff, with a full knowledge of the foregoing facts, permitted said Globe Investment Company to act as his agent in the collection of the interest and principal of the note and mortgage in suit, and permitted and authorized said Globe Investment Company to receive the money in satisfaction of the debt evidenced by said note and mortgage." These findings of the trial court seem to be supported by sufficient competent evidence, and, in accordance with the established rule of this court, will not be disturbed.

Other questions are argued in briefs, but having reached a conclusion which must dispose of the case, they will not be examined. We find no error in the judgment of the district court, and it is therefore recommended that the same be affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.