IN RE RECEIVERSHIP OF SCHANKE & COMPANY.

AMERICAN NATIONAL BANK OF BEAVER DAM, WISCONSIN, Appellant, v. E. W. CLARK, Receiver, et al., Appellees.

MORTGAGES: Payment—Receipt of Proceeds by Mutual Agent—Effect. Where the mortgagor of an unmatured mortgage authorizes his agent to negotiate a new mortgage and with the proceeds pay off the unmatured mortgage, and where the holder of the unmatured mortgage authorizes the same agent to collect and release his unmatured mortgage, the mere *receipt* by the mutual agent of the proceeds of the new mortgage in the form of checks, etc., does not *ipso facto* constitute a *payment* of the unmatured mortgage; and especially so when the mutual agent, on receipt of said proceeds, and pending the final approval of the new mortgage, deposits the said proceeds in his overdrawn general bank account and credits the mortgagor of the unmatured mortgage with the amount thereof. Payment of the unmatured mortgage can only result when the agent has, expressly or impliedly, *appropriated* the proceeds to said unmatured mortgage.

Headnote 1:   27 Cyc. p. 1390.

*Appeal from Cerro Gordo District Court.*—J. J. CLARK, Judge.

MARCH 16, 1926.

As the result of a hearing of four claims against the receiver of Schanke & Company, it was adjudicated that a note and mortgage for $4,500, originally given by E. L. Anderson to Schanke & Company, but now held by the American National Bank of Beaver Dam, Wisconsin, had been paid. The American National Bank appeals.—*Reversed.*

*Blythe, Markley & Rule,* for appellant.

*Senneff, Bliss, Witwer & Senneff,* for appellee E. W. Clark, Receiver of Schanke & Company.

*Thompson, Loth & Lowe,* for appellee E. L. Anderson.

*L. T. Bosworth,* for S. S. Westly, appellee.

*Blythe, Markley & Rule,* for Ella R. Roberts, appellee.

MORLING, J.—The only question brought before us is whether the note and mortgage of claimant E. L. Anderson for $4,500, held by claimant American National Bank of Beaver Dam, Wisconsin, has been paid. This depends upon the relationship of the parties to and the effect of their transactions with Schanke & Company. The claimant E. L. Anderson, owning a quarter section, on October 15, 1919, gave his note for $4,500, payable to the order of Schanke & Company, and a mortgage on the south 80, to secure it. On June 1, 1922, Anderson gave a mortgage for $2,000 on the north 80 to claimant Ella R. Roberts. The $4,500 mortgage was sold to the Beaver Dam bank (appellant), but the assignment was in blank, and not recorded. In January, 1924, Anderson, through Olson, opened negotiations with Schanke & Company for a new loan for $8,000, with which to take up both these mortgages and to procure additional money for other uses. Neither of the mortgages was then due. Schanke & Company advised the Beaver Dam bank of Anderson's purpose to make a new loan, and inquired whether the bank would be willing to accept prepayment. The Beaver Dam bank expressed its willingness to do so, and forwarded to Schanke & Company the abstract, note, mortgage, the blank assignment, and a release, authorizing Schanke & Company to release or to use the assignment and its release as might best satisfy Schanke & Company. Schanke & Company wrote the Beaver Dam bank that they would ''take care of the matter as soon as he [Anderson] has the new loan in shape to do so.'' The Beaver Dam bank requested Schanke & Company to ''let us have the proceeds in Chicago exchange if all the same to you.'' In acknowledging the receipt of the papers, Schanke & Company wrote the Beaver Dam bank: ''As soon as we can get the new loan in shape we shall be pleased to forward remittance to you.''

Schanke & Company advised Olson that their client would accept payment of the $4,500 mortgage at any time, and that they could place a loan of $8,000, which Anderson, through Olson, agreed to accept. Anderson made application to Schanke & Company for an $8,000 loan, authorizing Schanke & Company to use the proceeds to remove all existing liens, and to have any necessary corrections in the title made before the loan was completed. Anderson executed the new note and mortgage for $8,000, and forwarded them through Olson to Schanke & Company, March 1, 1924. Schanke & Company had been previously instructed to bring the abstract up to date, and in the letter of March 1, 1924, were instructed to "close this loan up as soon as possible, deducting interest on the old loan, paying for abstracting, recording, revenue stamps, and deducting the bonus agreed upon and your commission of one per cent and send us draft for the balance." On March 11, 1924, Schanke & Company were requested to send as soon as possible "draft for balance above your present mortgage that we may take up the mortgage on the north 80 and close the matter up with Mr. Anderson." This letter was from Olson, who procured release of the Roberts mortgage. The Roberts release was sent to Schanke & Company for use in closing the new loan.

On March 25, 1924, Schanke & Company notified Olson of the attorney's report on the abstract, and asked for further certificates, to show authority of an executrix to release a prior mortgage. On March 27, 1924, Olson wrote Schanke & Company that he had sent for the required certificate, and stated, as he had previously done, that Anderson was in need of a part of the money, and asked for $1,000 advance on the loan. The new note and mortgage were made payable to Schanke & Company. Schanke & Company, on March 29, 1924, advanced taxes and drainage assessment, but stated their preference to "withhold further remittance until the title is in shape, which should not be longer than the first part of next week."

On March 6, 1924, Schanke & Company advised claimant Westly that they had an application for the $8,000 loan. The negotiations between them resulted in the sale of the $8,000 mortgage and note by Schanke & Company to Westly, on April 8, 1924. On that date, Westly gave Schanke & Company two

certificates of deposit for $1,000 each, a check on one bank for $2,500, and on another bank, check for $3,235.31, and $250 in Liberty bonds, all of which, with accrued interest, amounted to the principal and interest of the new Anderson $8,000 note and mortgage. Schanke & Company delivered to Westly the note and mortgage, and stated to him that the abstract was being continued, to show the complete transaction and the recording of the assignment, and that the mortgage would be shown as a first mortgage. Westly knew, in a general way, from the application, that he was paying off previous mortgages of $6,500, which the application said would be paid, but did not know whether that had already been done or was being done. He says that nothing was said about the old mortgages at the time he made the payment, because he had previously told Schanke & Company that he would not consider anything but a first mortgage, which the Anderson mortgage purported to be. The two checks amounting to $5,535.21 were deposited in Schanke & Company's local bank account, that will be presently referred to, and a memorandum check for that amount drawn in favor of, but not delivered to, Anderson.

Schanke & Company's representative, who had charge of the sale, testified that he talked the matter over with other officials of Schanke & Company. He did not think he told them they should pay the prior mortgage, because he "did not have authority to. It was understood between us. Mr. Schilling [vice president] and I talked it over. There was talk between me and Mr. Schilling that this money was now ready to be used, and should be used to pay the existing first mortgages, and it was with that understanding that I deposited Dr. Westly's checks in the general banking account. Depositing the proceeds of the certificates of deposit and the bonds was done by others.

"Q. This talk between you and Mr. Schilling was that the money was to be held separate until the loan was finally closed, for Mr. Anderson? A. It was merely speaking to others in the office that I would like to have it that way; I had no authority to segregate it. I simply called their attention to the fact that that money was for a special purpose, I presume.

"Mr. Loth: They did not say that they would not follow your suggestion?

"A. No. * * * There was no controversy. * * * I don't recall having any talk with anyone else about it. * * Q. But the check as made to E. L. Anderson,—who would indorse it? A. It would be merely canceled by the same person who drew it, never having been delivered to Mr. Anderson. * * * That was a method we had employed quite frequently in similar transactions; there was nothing at all unusual about it. It was not the purpose, in making this check, to deliver it to Mr. Anderson at all. * * * I saw a voucher dated the day following, indicating that this check had been passed to Mr. Anderson's credit and canceled. Q. Just showing the credit on your books to Anderson? A. Yes. Q. Now let's suppose that the $5,700 had been used to pay these prior mortgages,—what would the book entry have been? A. The check would have been canceled, and the entry would have shown the application of the funds as it might have been made. It might have passed through Mr. Anderson's account on our books, and it might not, according to the circumstances."

The Liberty bonds were sold, the full amount of the price of the mortgage to Dr. Westly, $8,053.33, was realized, and the whole was deposited by Schanke & Company in their general bank account with the local bank, and, as noted, credited on Schanke & Company's books to Anderson. The books of Schanke & Company (those of the bank itself not being produced) showed that at that time Schanke & Company's bank account was overdrawn over $31,000, after the deposit of the proceeds of the mortgage, and continued overdrawn to more than $21,000 until the appointment of a receiver of Schanke & Company, on May 26, 1924. Schanke & Company's books, however, were not accurate, because they showed the entry of memorandum checks similar to that referred to, which were not in fact delivered, and the bank honored all checks up to May 14th, whether there was money in the account to meet them or not. The condition of the bank account is not more definitely shown. No remittance was made by Schanke & Company to the American National Bank or Anderson or Mrs. Roberts. The president of Schanke & Company testified:

"I understood that the money which came from Dr. Westly

was a fund which would ultimately be used for the payment of the two mortgages which we held for collection."

Schanke also testified, over objection, that they had taken the Anderson note and mortgage for their own account. They had never credited Anderson with the mortgage. The credit to Anderson was, as noted, of the money received for it.

"The $8,000 was the fund which would have paid the mortgages. That is what it was there for."

He also testified that the abstract was being held until the title was completed. There is no evidence that the American National Bank was credited with or notified of the receipt of any of the money, or that anything was done by Schanke & Company in the way of appropriating it on their books or otherwise to the American National Bank. Schanke testified that the money "was not exactly segregated. It was placed in the bank to our account." He testified that they intended to use the money in payment of the mortgages when the title was ready.

"We never carried that out. We went into the hands of a receiver before we had an opportunity to carry it out.

"Q. So that, until you got the money ready to pay it, you were holding these papers for this bank, were you? A. Yes. * * * Q. How would you get their money if they held the first mortgage? A. In this instance, the account of Anderson would be charged with the amount disbursed for the first mortgage.

"The Court: You mean, then, that, when you sent the money on to them, you would charge Anderson? A. Yes. The Court: Leave it in Anderson's name until that time? A. Yes. * * * When we paid it out on the first mortgages, we charged his account with it. * * * Neither Mr. Anderson nor the bank had any knowledge of the manner in which our books were kept, as far as I know."

Schanke & Company's vice president, Schilling, who had charge of the transaction, testified that, so far as he knew, the money was never credited to the American National Bank. The cashier of the American National Bank testified that the bank never received any notice of any credit upon the mortgage; that they expected Schanke & Company to pay it out of the new mortgage; and that the papers were not to be turned over to Anderson until they had received their

money. The note and mortgage were retained by Schanke & Company until the appointment of a receiver, and are now in the receiver's hands.

On April 10, 1924 (after the sale to Westly), Schanke & Company wrote to Olson that they were anxious to get the Anderson loan completed, and asked for the certificate, "trusting that you can get these papers to us within the next few days so that we can have the abstract continued." On April 16, 1924, Olson sent the certificate, stating his belief that that was the last thing needed to meet the requirements of the attorney, and asking draft for balance, after taking out expenses and "paying the former loan which you had." On May 6, 1924, Schanke & Company wrote Olson that, on April 17th, they had returned the certificate for correction; that it would be necessary to change it, as in its then form it was of no effect; that they were surprised that it was taking so long to get it corrected. They asked Olson to crowd the matter along. "We have a client who is willing to take the loan, and do not want to run any chance of having him cancel out on us." On May 13, 1924, Olson wrote Schanke & Company that he had finally succeeded in obtaining the correction of certificate, according to requirements, and again expressed his belief that the attorney's objections were then covered, and the loan could then be closed. On May 27, 1924, Schanke & Company wrote Westly, announcing the appointment of a receiver, stating that the loan had not been fully completed and the incumbrance had not been released. The vice president of Schanke & Company, Schilling, testified that the attorney had not finally passed on the title, "and it was the custom not to pay out any money until we had our attorney approve things." Anderson did not know that the loan had been sold until after the receiver was appointed.

It is argued in behalf of Anderson that Schanke & Company were his agents to place the new loan and to pay the appellant's mortgage from the proceeds, and were appellant's agents to collect and release the mortgage. We will assume, for the purpose of this discussion, that this position is correct. It is further argued that, as Schanke & Company were agents for the purpose both of negotiating the new mortgage and collecting the

old one, their receipt of the money, on the one hand, was a payment of appellant's mortgage, on the other, and that the $4,500 note and mortgage are extinguished.

Payment of a debt involves both a delivery with intent to pay and a receipt with intent to accept in payment. *Borland v. Nevada Bank*, 99 Cal. 89 (33 Pac. 737, 37 Am. St. 32) ; *Bronson v. Rugg*, 39 Vt. 241; 30 Cyc. 1181; *Detroit, H. & S. R. Co. v. Smith*, 50 Mich. 112 (15 N. W. 39). It will be recalled that the money received by Schanke & Company from Westly was credited to Anderson. Not only this, but, on the record before us, the loan transaction, at the time of the receivership, was not entirely completed. The title had not been finally accepted. It is thought by appellee that Schanke & Company were not acting in good faith with respect to this matter of title, especially as they were apparently holding out to Anderson that the paper had not been sold, representing to him that they had a client, but not telling him that they had actually delivered the paper and got the money for it. Still, Schanke & Company might have considered themselves under obligation to take back the paper if the title was not made perfect. We cannot say, on this record, that the title was perfected, or that Schanke & Company were under no obligation to Westly to perfect it. But, as we view the case, it is not necessary to determine this question. The title had not been finally accepted. Schanke & Company's relationship to Anderson in negotiating the loan had not been terminated. The unexpended proceeds of the loan stood to the credit of Anderson on Schanke & Company's books. What we are about to say has reference only to the present controversy between the Beaver Dam bank and Anderson. The rights of Anderson against Schanke & Company, or against the local bank in which Schanke & Company deposited the funds received from Westly, or the rights of Anderson and Westly, as between each other, are not before us. Schanke & Company gave credit to Anderson. They never gave credit or made application otherwise to the benefit of the Beaver Dam bank. Ostensibly they were acting for Anderson. Assuming that it was Anderson's expressed purpose to Schanke & Company that they immediately, on selling the $8,000 mortgage, should pay the $4,500 mortgage, and assuming further that the purpose of the

Beaver Dam bank was that, immediately on realization of funds, their mortgage should be paid, still we think that Schanke's receipt of Westly's checks, certificates, and bonds (the transaction not having been repudiated) was, as it purports on the books to be, for Anderson, and could not operate *ipso facto* as payment to the Beaver Dam bank. Schanke's receipt of the checks, certificates, and bonds could not operate as payment for the mortgage sold to Westly until they were realized upon. Until then, if Schanke & Company had been authorized to receive them, they were received only as conditional payment. *McFarland v. Howell*, 162 Iowa 110, 116; *Wilken v. Voss*, 120 Iowa 500; *Ormsby v. Graham*, 123 Iowa 202; *Griffin v. Erskine*, 131 Iowa 444, 448; *Western Sec. Co. v. Atlee*, 168 Iowa 650; *Ost v. Merchants & F. Bank*, 159 Ga. 200 (124 S. E. 883); *Jensen v. Laurel Meat Co.*, 71 Mont. 582 (230 Pac. 1081). The same would be true with respect to the $4,500 mortgage. We think, too, that some importance must be attached to the facts that Anderson was the actor, and in the transaction under consideration, first employed Schanke & Company; that the $4,500 mortgage was not due, and he wanted to pay it before maturity; that for his accommodation the paper was sent to Schanke; that, to some degree at least, the sale and realization upon the $8,000 mortgage must have preceded the payment of the $4,500 mortgage. The Westly paper, when received, was not available to pay the Beaver Dam bank. In realizing upon it, Schanke & Company, to the amount of the checks at least, and to an amount which left much less in the form of certificates and bonds than sufficient to pay the $4,500 mortgage, deposited them in the local bank against an overdraft. The case as it stands here is no different in effect than if Schanke & Company had turned over the Westly paper to any creditor, to apply on their debt. When so transferred, the paper (there having been no disaffirmance) became, for the purposes of this case, the property of the local bank. *Security Nat. Bank v. Old Nat. Bank*, 154 C. C, A. 1 (241 Fed. 1). Schanke & Company's receipt of it was a part of their process of receiving payment for the $8,000 mortgage. The proceeds of the $8,000 mortgage, therefore, were never available in Schanke & Company's hands to pay the Beaver Dam bank.

We think that, in the case of a common agent for both parties, as· here, there must be not only a receipt of the money on account of the debtor, but there must be an application of it upon the debt, or an appropriation to the creditor's account or for his benefit, before it can be said that the agent holds the money as agent for the creditor, or that the creditor is paid. *Phillips v. Mayer,* 7 Cal. 81; *Wilson v. Wilson,* 17 Ohio St. 150 (91 Am. Dec. 125); *Hatch v. Hutchinson,* 64 Ark. 119 (40 S. W. 578); *Thigpen v. Arant,* 213 Ala. 516 (105 So. 644); *Moore v. Norman,* 52 Minn. 83 (53 N. W. 809); *Miller v. Byrd,* 26 Ga. App. 307 (106 S. E. 192).

In the cases cited in behalf of Anderson, there had been such an appropriation or application. *Randall v. Eichhorn,* 80 Minn. 344 (83 N. W. 154); *Bailey v. Anderson,* 75 Minn. 49 (77 N. W. 414); *Belk v. Capital Fire Ins. Co.,* 100 Neb. 260 (159 N. W. 405); *Pochin v. Knoebel,* 63 Neb. 768 (89 N. W. 264); *Baldwin's Bank v. Smith,* 215 N. Y. 76 (109 N. E. 138). The appropriation may be implied, but we find no foundation for finding that there had been any implied application or appropriation. We are constrained to hold, on this record, that the mortgage held by the American National Bank had not been paid.

The judgment is—*Reversed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.