CLAYTON COUNTY STATE BANK, Appellant, v. JOHN P. McMORROW, Appellee.

No. 39321.

JUNE 24, 1929.

REHEARING DENIED NOVEMBER 22, 1929.

*G. W. Hunt,* for appellant.

*A. E. Sheridan,* for appellee.

Morling, J.—Defendant seeks to attach to the receipt by D. J. Murphy of the proceeds of a new loan which defendant made through Murphy for the purpose of paying off the note and mortgage in suit, the consequence of payment to plaintiff, claiming that payment was thus made to Murphy as agent for plaintiff. The evidence as to the relationship between plaintiff and Murphy is in many respects similar to that set out in *Kann v. Fish,* 209 Iowa 184. Plaintiff, through Murphy, made a farm loan to defendant, for which defendant gave to plaintiff the note in suit, dated May 18, 1915, for $4,000, payable 5 years after date, at the plaintiff bank, Guttenberg, Iowa, with interest at 7 per cent. By the terms of the note, defendant was given the privilege of paying $100, or any multiple thereof, at any interest-paying date. Payment was secured by farm mortgage. Defendant testifies that, in May, 1916, he told Murphy that he wanted to pay plaintiff and get a cheaper rate. Murphy "said he could get a loan from Lane & Waterman at 6 per cent. I told him I wanted the abstract back, and he said he would send and get it. I paid Mr. Murphy interest on the Clayton County State Bank loan the 18th or 20th of May, 1916, and later I signed an application for a loan from Lane & Waterman * * * to pay off the Clayton County State Bank. * * * I told him to go ahead and get it and pay off the Guttenberg loan. * * * When he got the money, he was to pay off the Clayton County State Bank loan. * * * He said he would do it. I had confidence in him. I felt absolutely certain he would do whatever he said he would do." Defendant also says that Murphy had told him that plaintiff would take its money, told him he had authority to take the money for plaintiff; that he relied on what he knew about Murphy's acting for plaintiff and on what Murphy told him, because he thought, if Murphy was not reliable, he would not be handling the loans; that he told Murphy to send the interest he was paying to plaintiff, and Murphy said he would.

"When I came to pay the interest, I asked Mr. Murphy how much I owed him. I told him I was there to pay the interest. He figured up, and said $320, or $330."

It seems from defendant's evidence that Murphy charged interest on plaintiff's loan at 8 per cent, though the note called for 7. Plaintiff's evidence is that it was not paying Murphy compensation; defendant's is that he did not know that he was paying Murphy any commission. Murphy, under date of May 20, 1916, wrote to plaintiff, asking plaintiff to send defendant's abstract, as defendant "wants to pay off his loan. I tried to keep him from doing so, but he wants to, and would be awful sore at me if I insisted on his not doing so." Plaintiff forwarded to Murphy the abstract. The new loan from Lane & Waterman was procured, for which Murphy received draft dated June 22, 1916, payable to his order, for $3,958. Murphy indorsed the draft and collected the proceeds. It seems that he forged a release of the mortgage held by plaintiff and made false entries on the abstract of title. Neither plaintiff nor defendant received any of the proceeds of the new loan. Defendant made no payment on the note held by plaintiff, other than the interest for the first year. Murphy kept up the interest payments. When the note matured, he sent to plaintiff a forged extension agreement. Defendant testifies that Murphy "said the money was there * * * to pay off the Clayton County State Bank loan. * * * He said he would pay—send the draft to the Clayton County State Bank. * * * Murphy told me that the Clayton County State Bank papers were canceled, and he would send and get them; and that is what he got the money for. * * * Murphy told me the Clayton County State Bank note and mortgage were in his office, but were mislaid some place, and he would send them to me."

There is much evidence on the subject of Murphy's collecting principal, as well as interest, on loans which he had made for plaintiff. The loan papers in such loans were retained by plaintiff in its own possession, and that is true of the note and mortgage in suit. There is no evidence that Murphy had authority to accept payment before maturity, except that Murphy requested plaintiff, in writing and by telephone, to accept payment of loans before they were due, and to increase the amount, and that

such requests were granted. How many, is not shown. What, if any, response plaintiff made to Murphy's letter of May 20, 1916, is not shown, further than that Murphy received the abstract of title. It does not appear that defendant knew either of this letter or of plaintiff's acceptance of payment of loans before maturity. The evidence is insufficient to show ostensible agency. Defendant's reliance was on what Murphy told him, not upon other knowledge or information that he had concerning Murphy's agency, authority, or conduct of the business of the agency.

So far as the rights of the parties to this action are concerned, Murphy, in procuring the new loan, was defendant's agent, not plaintiff's.

While defendant had the right to pay any multiple of $100 on any interest-paying date, the interest-paying date was May 18th. The draft for the new loan was made out more than a month later. The draft was not for the full amount of defendant's note to plaintiff, and not for a multiple of $100. It was for $3,958, while the note was for $4,000. Defendant's testimony is not, in words or substance, that he paid Murphy for plaintiff, or that Murphy was paid the money for plaintiff. It is that he told Murphy to pay off plaintiff; that Murphy "was to pay off the Clayton County State Bank loan;" that Murphy said the money was there to pay off plaintiff, and "said he would pay—send the draft to the Clayton County State Bank." Whether there was any conversation on the subject of the amount of the draft and the note, or that the interest payment date had passed, does not appear; but the question whether the plaintiff "would take its money" was in their minds. There is no evidence whatever that defendant, in form or intent, paid $3,958 or $4,000 to Murphy as agent for plaintiff. It cannot be said, on this record, that defendant did make payment to Murphy as plaintiff's agent; that he intended to make such payment, or that Murphy accepted the draft as agent for plaintiff. Payment involves intent, express or implied, to make payment, on the one side, and to receive or accept it, on the other. The evidence is not that payment was made to Murphy, but that Murphy was to make payment to plaintiff, or send to plaintiff the draft. Murphy, at most, was the common agent of plaintiff and defendant, and his agency for defendant, on this testimony, was not completed; for Murphy was to, but did not, send the draft or the

money to plaintiff. *In re Receivership of Schanke & Co.*, 201 Iowa 678. If it had been sent, plaintiff would not have been bound to accept it. Furthermore, the evidence is insufficient to show authority on the part of Murphy to accept such payment, or to accept it on a date when it was not payable. *Dilenbeck v. Rehse,* 105 Iowa 749; 2 Corpus Juris 627, 632; 21 Ruling Case Law 869; *Tropena v. Keokuk Nat. Bank,* 203 Iowa 701.—*Reversed.*

ALBERT, C. J., and STEVENS, FAVILLE, DE GRAFF, and WAGNER, JJ., concur.