HUTCHINGS v. SECURITIES EXCHANGE CORP.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ABANDONED CLAIMS.
   In action by obligee's assignee under contract of settlement, claim of set-off of advancements alleged to have been made to assignee's husband, the obligee, is not discussed where no proof of such advancements was offered at the trial.

2. PAYMENT—INTENT.

　　Intent, express or implied, to make payment on the one side and to receive it or accept it on the other is essential to constitute payment.

3. SAME—PARTIAL PAYMENTS—EVIDENCE.

　　In action by obligee's assignee to recover balance due under contract of settlement, claim of payments represented by five checks to assignee's husband, the obligee, *held*, properly denied under evidence showing, among other things, that husband, although he had authority to receive payments, on occasions involved gave his notes for money received.

4. NOVATION—ELEMENTS.

　　Elements necessary to establish novation of a contract are: parties capable of contracting, valid prior obligation to be displaced, consent of all parties to substitution based on sufficient consideration, and extinction of old obligation and creation of a new one.

5. SAME—CONSENT TO SUBSTITUTION—EVIDENCE.

　　Finding of court that obligor's claim of release from contract of settlement by reason of novation, because of alleged substitution of corporate obligor which had made some payments on the contract, was not sustained because obligee's assignee had not consented to such substitution *held*, supported by record showing denial by such assignee; mere fact that payments were made by a third party being insufficient to establish a novation.

6. CONTRACTS—THIRD-PARTY BENEFICIARY STATUTE EFFECTIVE AS TO PREVIOUSLY-EXECUTED CONTRACTS.

　　Agreement whereby obligor under another contract obtained promise of defendants to pay obligor's obligation to plaintiff's assignor bound such defendants to pay plaintiff under third-party beneficiary contract statute enacted after both contracts became effective (Act No. 296, Pub. Acts 1937).

7. CORPORATIONS—ASSUMPTION OF STOCKHOLDER'S OBLIGATION.

　　Although the owners of the entire stock of a corporation were liable on a contract, such corporation was not liable thereon where, notwithstanding attempted transfer of the obligation to it, assumption thereof was never authorized by proper corporate action, never having been presented to or acted upon by its board of directors.

Appeal from Kent; Fuller (Glenwood C.), J. Submitted January 10, 1939. (Docket No. 110, Calendar No. 40,376.) Decided March 9, 1939.

Action by Irene E. Hutchings against Securities Investment Corporation, a Michigan corporation (formerly Securities Exchange Corporation), Neil Wagennaar, Gerritt B. Takens, and Albert P. Crell, for sums due on a contract. Set-off by defendants Securities Investment Corporation, Wagenaar and Takens. William J. Delaney, as receiver of Securities Investment Corporation, substituted as a party defendant. From judgment for plaintiff against defendants Wagenaar, Takens, and Crell, they appeal. Affirmed.

*Dean S. Face,* for plaintiff.

*Gillard & Gillard* and *Warner, Norcross & Judd,* for defendants Wagenaar, Takens and Crell.

*James H. McLaughlin,* for defendant Delaney.

Chandler, J. On November 23, 1934, plaintiff's husband, Paul M. Hutchings, and defendant Albert P. Crell entered into an agreement whereby Hutchings was to receive the sum of $7,500 as consideration for the release by him of certain claims and for services he had performed in connection with an attempted reorganization of the Wolverine Bumper & Specialty Company, which finally resulted in a sale of the assets of said company to a new company known as the Michigan Bumper Corporation. The details of said agreement are of no importance in this litigation. On the same day, Paul M. Hutchings assigned his interest in the contract to his wife, Irene E. Hutchings, the plaintiff herein, and a copy thereof was delivered to Mr. Crell.

Thereafter, the Michigan securities commission authorized the issuance of 325,000 shares of capital stock by the Michigan Bumper Corporation, distribution of which was to be made by the Securities Exchange Corporation, later known as the Securities Investment Corporation, a brokerage concern, the stock of which was equally owned by defendants Neil Wagenaar and Gerritt B. Takens.

On March 1, 1935, Crell entered into an agreement executed by Wagenaar and Takens individually, which provided in part as follows:

"We agree

"(a) to deliver to you 85,000 shares of Michigan Bumper Corporation stock (less 9,800 shares hereinafter mentioned) in consideration of your assignment to us of your claim against Wolverine Bumper & Specialty Company;

"(b) to assume and agree to pay your obligation to Paul M. Hutchings set forth in your agreement with him dated November 23, 1934, and, in this connection, to sell the 9,800 shares of stock above mentioned in order to provide funds with which to pay this obligation."

No payments had been made on plaintiff's claim prior to March 1, 1935. A short time thereafter, plaintiff called upon Mr. Crell at his office and demanded payment. The conversation which transpired at this meeting is a disputed point, it being claimed by Crell that he telephoned defendant Wagenaar at the Securities Exchange Corporation relative to plaintiff's visit and that Wagenaar, in response to Crell's inquiry as to whether plaintiff could get some money, replied: "I will do the best I can." Crell further claims that during this same conversation, it was agreed that if she accepted payments from the Securities Exchange Corporation, she would thereby release him from all liability and

would be obliged to look to said corporation for all subsequent payments. This was denied in its entirety by plaintiff.

In any event, plaintiff never approached either Takens, Wagenaar, or the Securities Exchange Corporation for payment but instead delegated her husband to do so. Several payments subsequently were made which will be hereinafter discussed, and plaintiff finally instituted this action to recover the balance claimed by her to be due.

The declaration admitted payments had been made in the amount of $4,480 and claimed a balance due, without interest, of $3,020.

The first dispute arises in connection with the amount claimed to be still unpaid, the answer of Wagenaar, Takens and Securities Exchange Corporation claiming credit for payments alleged to have been made on the claim between March 2, 1935, and October 9, 1935. The answer also claimed a set-off for the sum of $650, alleged to represent advancements made to plaintiff's husband between November, 1933, and October, 1934. No proof of the advancements was offered at the trial.

The evidence in support of the claim of additional payments having been made was confined to five checks given between August 21, 1935, and October 9, 1935, totalling $1,100, each being drawn by the Securities Exchange Corporation payable to Paul M. Hutchings. On each of the occasions that sums were received by Mr. Hutchings between the dates mentioned, he gave to the corporation his promissory note covering the amount of the check received.

Plaintiff insists that the foregoing amounts constituted loans to her husband and were not intended as payments on the obligation. Defendants, on the other hand, contend that they were intended as payments and that credit should be given therefor.

It is conceded that plaintiff's husband had authority to make collections on the amount due on the contract. Whether or not the sums given to him as aforesaid constituted payment on the obligation then becomes a matter of intention. If they were given and received as payment, credit therefor should be given.

"Payment involves intent, express or implied, to make payment on the one side and to receive it or accept it on the other." *Clayton County State Bank* v. *McMorrow*, 209 Iowa, 165 (225 N. W. 859, 1 A. L. R. 1522).

See, also, *Luckenbach* v. *W. J. McCahan Sugar Refining Co.*, 248 U. S. 139 (39 Sup. Ct. 53).

The stock turned over by Crell to Wagenaar and Takens was sold and the proceeds in the amount of $8,330 credited on the books of the Securities Exchange Corporation in the name of "G. B. Takens, Neil Wagenaar, % Paul Hutchings, Wolverine Bumper Co." The book account shows debits for the sums paid to Mr. Hutchings and for which credit is now claimed. Mr. Wagenaar testified that on each occasion, Hutchings rushed into his office saying he was in need of money and inquiring if there was any available for him on his account. If the account had not been garnisheed at the particular time, a check would be given as a payment and, according to Wagenaar, the promissory notes were taken merely as a protective measure because he was not sure as to whether plaintiff or her husband was entitled to receive the payments. He further testified that the notes so taken meant nothing and were not considered as an asset of the corporation. The trial court was not satisfied with this explanation, stating that no convincing reason had been advanced as to why the notes were given if the sums paid were not loans as they appeared to him to be.

The same result was reached in connection with two other checks given to Mr. Hutchings, in connection with which the following agreement, omitting real estate descriptions, was given by Hutchings to Wagenaar:

"In consideration of the advance to Paul M. Hutchings the sum of $300 by Neil Wagenaar, said Paul M. Hutchings hereby agrees to pay or cause to be paid to said Neil Wagenaar, 50 per cent. of any sums of money or any drilling interests or any emoluments received by said Paul M. Hutchings from the sale or development of an oil and gas lease on the following described property. * * *

"It is further understood and agreed that the sum of $300 above mentioned is to be returned to Neil Wagenaar before any division of interests or profits is made to the two parties to this agreement."

In view of the latitude permitted Hutchings by plaintiff in dealing with her funds, we have closely examined the evidence and claims of defendants but conclude, as did the trial court, that the sums claimed as payments were intended to be and were in fact personal loans to Paul Hutchings, and that credit therefor on plaintiff's claim was properly denied.

Defendant Crell seeks to escape liability on the theory that he was released therefrom by a novation to which plaintiff was a party. The essential requisites to a valid novation were reiterated in *George Realty Co.* v. *Gulf Refining Co.*, 275 Mich. 442. One of the essential elements is the consent of all parties to the substitution. Another is found to be the extinction of the old obligation and the creation of a valid new one. The claim of novation in the instant case is alleged to be based in the first instance on the conversation which occurred between plaintiff and Crell in the latter's office in March, 1935, to which

reference has heretofore been made, and in which it is claimed that plaintiff agreed that if she accepted payments on the obligation from the Securities Exchange Corporation, she would look to that source for all future payments. As has been stated, this was denied by plaintiff, and we see no sound reason for disturbing the finding of fact made by the trial court that the plaintiff did not consent to such an arrangement.

In further support of this claim, it is asserted that the subsequent conduct of plaintiff resulted in a novation. On November 2, 1935, a demand was made upon defendant Crell for the entire sum due under the contract, payment thereof being desired to satisfy claims of creditors of Paul M. Hutchings which were then being litigated in the Federal court. On November 11, 1935, the Securities Exchange Corporation paid $2,200 on the account and received a receipt therefor signed by plaintiff's attorney and her husband wherein it was recited that the contract had been "assigned to and assumed by Securities Exchange Corporation and/or Neil Wagenaar and G. B. Takens on March 1, 1935." It also provided that the payment was made without prejudice to the rights of Securities Exchange Corporation and/or Wagenaar and/or Takens for any advancements theretofore made by them. We do not construe this instrument to be anything more in legal effect than a receipt for the amount paid on the contract. It cannot be said to amount to an agreement or recognition of an agreement on the part of plaintiff to accept a new debtor and to release Crell from liability. The mere fact that payments were made by a third party and accepted by plaintiff is not sufficient to establish a novation.

We have examined other claims made by defendants on this point but after a review of all the evi-

dence are of the opinion that a novation was not established by the proofs. It therefore follows that defendant Crell has not been released from liability.

The trial court held defendants Takens and Wagenaar liable under the provisions of Act No. 296, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 14063–1 *et seq.*, Stat. Ann. 1938 Cum. Supp. § 26.1231 *et seq.*), in view of the agreement made between them and Crell on March 1, 1935, whereby they assumed Crell's obligation under the contract. Section 1 of the statute provides:

"Any person for whose benefit a promise is made by way of contract, as hereinafter defined, shall have the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee."

We approve the application thereof to the facts presented in the instant case.

Subsequent to the institution of this suit a receiver was appointed for the Securities Exchange Corporation who filed a separate answer herein. The trial court properly found that this party was not liable to plaintiff because even though Wagenaar and Takens, owning all of the stock of the company, attempted to transfer the obligation to the corporation, the assumption thereof was never authorized by proper corporate action. The matter was never presented to or acted upon by the board of directors of said company.

Judgment affirmed, with costs to plaintiff.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, and POTTER, JJ., concurred. McALLISTER, J., did not sit. NORTH, J., took no part in this decision.