MARY NOLTE, Appellee, v. SECURITY INSURANCE COMPANY OF NEW HAVEN, CONNECTICUT, Appellant.

No. 39507.

Marchi 12, 1929.

Rehearing Denied June 24, 1929.

*Silber, Isaacs, Silber & Woley, Fishburn & Fishburn,* and *Cook & Balluff,* for appellant.

*G. Allbee* and *R. S. Jackson,* for appellee.

Morling, J.—I. Plaintiff's motion for a directed verdict was upon numerous grounds. Defendant's contention is that none of them was good. Without considering the others, we  think two of them were sound, and to them we limit our discussion. The defense is founded on the failure of the assured to pay a premium note. Plaintiff takes the position that, while a purported copy of the note was set out in the policy, it was not a true copy. The note as it was actually executed was for $128, and authorized the insertion of the number of the policy, which was done. The copy set forth in the policy was for $100, and did not show the number of the policy. Defendant contends, in substance, that the policy nevertheless set out a true copy, because, at the time the policy was issued, the assured was credited with $28 on account of the cancellation of two other policies, and indorsement at the time of the application was made upon the note as follows: "Credit on within note of $28 by cancellation of policies Numbers 46160 and 46161."

Defendant argues:

"By the copy made part of his policy, France [assured] was advised that he was indebted in the amount of $100. At no time could this note have been enforced against France for more than the principal sum of $100. The purpose of the statute requiring copies of premium notes to be made part of the policy is to advise the insured of the amount owing by him on his indebtedness to the insurance company, and that is precisely what the copy of the note here in question did."

By the terms of the note, "* * * the assured shall be entitled to a pro-rata credit for the time the policy has been in suspense." The indorsement of credit of $28 shows no date. The note calls for interest at 6 per cent from date until paid. Section 8974, Code, 1927, requires all insurance companies, upon issue of any policy, to attach or indorse "a true copy of any application or representation of the assured which, by the terms of such policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy." Under this statute, "a true copy" of premium note, if one is given, must be attached or indorsed. *Summers v. Des Moines Ins. Co.*, 116 Iowa 593; *Robey v. State Ins. Co.*, 146 Iowa 23. If such copy is not set out, the company is precluded from pleading or proving its existence and nonpayment as a defense. Idem; Code, 1927, Section 8975. In *Johnson v. Des Moines Life Ins. Co.*, 105 Iowa 273, 277, it is said:

"In view of these definitions, and the purpose of the statute, we think it is clear that the statute contemplates more than a merely substantial copy, and yet not a true likeness or *fac simile*. It must be so exact and accurate as that, upon comparison, it can be said to be a true copy, without resorting to construction. If, upon comparison, it may be said that the copy is conformable to the facts, and in accordance with the actual state of things appearing in the original, then it may be said to be a true copy. * * *"

Clearly, the note of which the policy purports to set out a copy is an entirely different instrument from that which the assured executed. By the copy, defendant undertook to set out only its construction of the legal obligation, the amount for

which, according to defendant's claim, the assured was indebted. The statute says not merely that a copy, but "a true copy," must be attached. Obviously, the copy of a note for $100 is not a copy of a note for $128. The note so held by the defendant does not show the date at which the maker was entitled to the credit of $28. It draws interest by its terms at 6 per cent from its date. It entitles the assured to a pro-rata credit for the time the policy is in suspense. The pro-rata credit is, according to the note, a pro-rata credit of $128; according to the copy set out in the policy, a pro-rata of $100. The contract evidenced by the copy set out in the policy is entirely different from that evidenced by the note actually executed; but whether so or not, it was not for the defendant to set out its construction of the transaction or its interpretation of the legal effect thereof, in lieu of the instrument actually executed. Defendant was required, not merely to advise the assured of the amount for which it claimed he was indebted, nor even the amount for which he was actually indebted. The requirement was that the defendant set out a true copy of the note.

II. After maturity of the note, defendant gave to the assured notice that the note was due, and that, if it was not paid within 30 days, the company would be released from all liability  while the note remained past due and unpaid. Plaintiff assigned as one of her grounds for directed verdict that the notice did not state "the amount necessary to pay the customary short rates, up to the time fixed in the notice when the insurance will be suspended," as required by Section 8959, Code, 1927. The notice stated:

"Should you desire to have the policy canceled, the amount required to pay the earned premium up to the date that the policy suspends under this notice, in accordance with the customary short rate, as provided by the laws of Iowa is $. . . . . Permitting your policy to become suspended for the nonpayment of the note given for the premium does not cancel your obligation or liability to pay the premium note as this can only be done by the payment of the short rates in accordance with and as provided by the law."

The copy of the law set out on the back of the notice pre-

scribed that the company should serve notice, stating "the amount necessary to pay the customary short rates, up to the time fixed in the notice when the insurance will be suspended." It appears that there had been paid upon the note, at the time the notice was given, $78, and that the earned premium at short rates up to time of proposed suspension would be $76.80. Defendant therefore contends that:

"No amount was necessary to pay the customary short rate * * * The statute does not require that the suspension notice indicate the amount payable from the insurance company to the insured in the event that, at the time suspension becomes effective, the earned premium is less in amount than the sum already paid by the insured."

The statute requires the commissioner of insurance to prepare and publish a table of short rates, which "shall be for the guidance of all companies covered in this chapter, and the rate to be given in the notice therein provided, and no greater sum than thus fixed shall be demanded or collected. A copy of said short rates shall be printed on or attached to each policy." Section 8961, Code, 1927. It is also provided that, after the maturity of a premium, "the insured may pay to the company the customary short rates and costs of action, if one has been commenced or judgment rendered thereon, and may then, if he so elect, have his policy and all contracts or obligations connected therewith, whether in judgment or otherwise, canceled * * * and in case of suspension, forfeiture, or cancellation of any policy or contract of insurance, the assured shall not be liable for any greater amount than the short rates earned at the date of such suspension, forfeiture, or cancellation and the costs herein provided. * * *" Section 8960. It is plainly required by Section 8959 that the notice shall state "the amount necessary to pay the customary short rates, up to the time fixed in the notice." The statute is not complied with if the amount is left to inference, or left to the assured to compute or ascertain as best he may. The duty of informing the assured is by statute imposed on the company. The notice did not inform the assured that the amount paid was sufficient or more than sufficient to pay the short rates. It did not advise the assured that he might cancel without further payment. The notice did say that, if he desired to have the policy

canceled, "the amount required to pay the earned premium * * * is $ . . . ." It did say that cancellation could "only be obtained by the payment of the short rates," and it did say, by the copy of the statute indorsed, that the company was required to state "the amount necessary to pay the customary short rates * * *" In substance, the notice was that, to procure cancellation, short rates would have to be paid; and the company was required to state the amount, but the amount was not stated. The assured was left to ascertain for himself whether any amount, and what amount, was necessary to be paid. In *McDonald v. Anchor Mut. Ins. Co.*, 116 Iowa 371, it is said:

"The doctrine that forfeitures are not favored in law is so well settled that citation of authorities is hardly necessary in support of the rule. * * * For this reason, if for no other, this court has always held that statutes similar to the ones above set out [Sections 1727, 1729, Code, 1897, Sections 8959, 8961, Code, 1927], are mandatory, and must be strictly followed. * * * In recommending Sections 1727 and 1729 for passage, the code commission in its report said, in effect, that the object to be attained thereby was to make definite and certain what might be demanded for short rates for cancellation. * * * Defendant contends, however, that the notice was a substantial compliance * * *. To so hold would invite interminable litigation, and an issue in every case regarding the sufficiency of the notice and the effect of misstatements therein. There is only one safe rule, and that is to require strict compliance with the terms of the law. If we should hold that a mistake of $1 in the statement of short rates does not vitiate the notice, we should then be called upon to determine whether a mistake of $1.50, $2, or $3 would, and there would be no end to the questions which might arise. Such a result should be avoided, and it is not difficult to do so if we but follow the established landmarks, and apply the rules of strict compliance hitherto established."

We are of the opinion that the notice before us is such as reasonably to be construed as a statement that a payment would be necessary, but that it did not state the amount required, and that it was at least misleading. We are further of the opinion that, if the defendant was not claiming that a payment of short rates was necessary, it should have so stated. In *Marden v. Hotel*

*Owners' Ins. Co.*, 85 Iowa 584, the notice threatened suit if the note was not paid, but did not state that, if payment was not made, the policy would be suspended. It was there said:

"The statute is absolute, and its provisions must be complied with, in order to suspend a policy for the nonpayment of the premium. * * * It is apparent that the defendant did not contemplate a suspension of the policy when the first notice was given, because, after the note became due, and on March 10, 1890, another demand was made, which was in no manner the demand required by statute. Instead of giving notice of a suspension of the policy in the event of nonpayment of the premium, it advised the plaintiff that suit would be commenced on the note."

So here, we think the purport of the notice was that plaintiff would be required to pay short rates, in order to cancel, and that, before defendant could cancel, it would have to state the amount. It was suggestive that insertion of the amount was overlooked, or that payment of short rates and cancellation were not desired. We are of opinion that assured was not required to infer that, by leaving the blank for the amount unfilled, defendant intended to say that the short rates had been paid and cancellation might be obtained without making payment. The tenor of the notice was that a payment was required. The notice did not comply with the statute, and the policy was not, therefore, in suspense for nonpayment of premium.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.