| 18 | 425 |
|-----|-----|
| 106 | 459 |

COLES v. THE IOWA STATE MUTUAL INSURANCE COMPANY.

1. Insurance: ANNULLING POLICY. The Board of Directors of a Mutual Insurance Company, acting under provisions of the articles of incorporation and by-laws, authorizing them, when the payment of an assessment became delinquent, to recover the whole amount of the premium notes, and "at their option annul the policy of insurance," passed a resolution declaring what holders of policies were delinquent on a certain assessment, and that those, who should remain delinquent beyond a date mentioned, should be excluded and debarred, and lose all benefits of his, her or their insurance or insurances respectively, for and during the

term of such default and non-payment, and still holding them liable for the payment of all subsequent assessments which should be made upon their several policies during the continuance of the same. *Held*, that the resolution was within the scope of the authority conferred by the articles of incorporation and by-laws.

2. —— MUTUAL COMPANY: NOTICE TO MEMBERS. The members of a mutual insurance company are charged with knowledge of the rules and laws of the corporation.

*Appeal from Lee District Court.*

MONDAY, JUNE 5.

THE policy upon which plaintiff seeks to recover was issued December 12, 1861, and continued for six years. In November, 1863, the property was destroyed by fire. The recovery is resisted upon the ground that plaintiff did not comply with the orders and rules of the company in reference to assessments made upon his premium note.

All persons insured therein become members of the company and bound by the articles of incorporation. By one of these articles (15th), it is provided, that " the directors shall, after receiving notice of any loss or damage by fire * * * and ascertaining the same, or after the rendition of any judgment against said company for any loss or damage, settle or determine the sums to be paid by the several members thereof as their respective proportion of such loss, and notify them in, &c., * * * and this sum shall be paid to the treasurer within thirty days after such notice; and if any member shall, for thirty days after such notice, neglect or refuse to pay the sum so assessed to him, the directors may sue for and recover the whole amount of said premium note or notes, and at their option *annul the policy of insurance*, and the money thus collected shall remain in the treasury subject to the payment of such losses and expenses as have or may thereafter accrue; and the balance, if any remain, shall be returned to the party

from whom it was collected on demand, after thirty days from the expiration of the time for which insurance was made."

The 18th declares, that "the directors of said company shall not make more than one assessment for losses in one year, unless the means to pay losses cannot be obtained in any other way; nor shall the assessment in any one year exceed fifteen per cent on the amount of the premium note. And in order that such assessment may be made payable at the annual meetings of the company, the directors are authorized, in case of any loss or damage by fire, to borrow such sum or sums of money as may be required to pay such loss or damage, and in making the annual assessment the interest accruing on borrowed money, and also all necessary expenses, shall be included in such assessment." (The annual meetings are fixed for the second Monday in January, in each year.)

Section 2, Article 2 of the by-laws, declares that "whenever any assessment shall have been declared by the company, and notice thereof forwarded by mail or otherwise, and the insured shall for the space of thirty days neglect or refuse to pay the same, the directors may sue for and recover the whole amount of said premium note or notes, and at *their option annul the policy of insurance.*"

By the second division of the answer it is averred that the company did, on the 3d day of January, 1863, make an assessment of ten per cent on the premium notes, for the purpose of paying losses by fire and the expenses of the company for the preceding year, being $12 on the premium note of plaintiff; the same to be payable on or before the 15th of February following, of which said plaintiff had due notice more than thirty days prior to the time fixed for paying the same; that said plaintiff made default in the payment of said assessment; that on the 3d day of March the directors passed the following resolution:

"All policies on which the assessment of the 3d day of January; 1863, is not paid on or before the 10th day of April, 1863, the party so in default shall be *excluded and debarred, and shall lose all benefit and advantage of his, her or their insurance or insurances respectively for and during the term of such default and non-payment;* and, notwithstanding, shall be liable and obliged to pay all assessments that shall be made during the continuance of his, her or their policies of insurance, in accordance with the provisions of the articles of incorporation." It is also averred that plaintiff had due notice of this resolution and of the action of the board; that he failed and refused to pay such assessment, and so continued to make default until after the property was destroyed, and still continues, &c.; whereby he was excluded and debarred, &c., and hath no right to recover.

To this answer the plaintiff demurred; the demurrer was overruled, and he appeals.

*Hendershott & Burton* and *Rankin & McCrary* for appellant.

*R. H. Gilmore* and *John H. Craig* for appellee.

WRIGHT, Ch. J. — Three points are discussed by appellant's counsel, which they claim are legitimately raised by the demurrer. Four grounds are stated in the demurrer, all resolving themselves, however, into the proposition, whether the company, according to the terms of the policy, the articles of incorporation and by-laws, had the power to pass the resolution set forth in the answer. And the point made therein, and the only one, is that, under the power to *annul*, the company could not *conditionally* deprive the assured of the benefits of the policy, or, in other words, could not debar him of the benefits of his insurance during the time he might make default in the payment of assessments.

*(margin note: 1. INSURANCE: annulling policy.)*

This being the only question raised by the demurrer and determined by the court below, the other apparently unimportant ones need not and indeed cannot be noticed. It is our duty to pass upon the questions presented to and decided by the court below, and not upon those raised for the first time in this court. Whether the answer, therefore, was defective on the ground that the assessment of January 3d, 1863, was not such as to authorize the annulment of the policy for its non-payment, or for not averring that said assessment was the only one for the preceding year, and other grounds presented in the second and third points of the argument of appellant's counsel, we need not discuss nor determine. To our minds they present but little difficulty, and yet they are not before us in such a manner as to demand further attention.

The vital question in the case is, whether, under the conditions of the policy and the provisions of the articles of incorporation and by-laws, the company had the power to pass the resolution of March 3d, 1863. And here the argument is, that it was competent to "annul the policy," or, in other words, to make it void — to nullify or abrogate it — for the default of plaintiff in paying assessments upon his premium notes; but that this power did not authorize a resolution declaring that he should be "excluded and debarred, and should lose all benefit of his insurance, for and during the term of such default;" at the same time holding him liable for assessments during the continuance of the policy.

To the general proposition relied upon by plaintiff, that a corporation, as a mere creature of the law, possesses only those powers or properties which the charter of its creation confers, either expressly or as incidental to its very existence, we do not understand defendant to make any objection. (Upon this subject, see *Head & Amory* v. *The Prov. Ins. Co.*, 2 Cranch, 127; *Walden* v. *Louisiana Ins. Co.*, 12

La., 135; Story on Cont., 312; Ang. & Ames on Corp., § 256; 1 Phill. on Ins., § 11; 2 Kent, 298; *City of Davenport v. Kelley,* 7 Iowa, 102, and cases there cited.) But, conceding this rule even, it is insisted that the act of the company was within the scope of its granted powers, or was authorized by the policy or the contract upon which plaintiff relies, including in such contract the articles and by-laws which are referred to and made a part thereof.

The action of the company is spoken of in argument as operating to *suspend* rather than annul the policy. In our opinion this is not the true meaning of the language used. It is rather a conditional annulment than a suspension of plaintiff's right and liabilities. During the time of his default he is "excluded, debarred" and cut off from all benefit and advantages under his policy. It must be remembered, as conceded by the appellant in his argument, that the absolute or unconditional annulment of the policy would not have deprived the company of the right to collect the whole amount of the premium note, and from the proceeds to pay future as well as past assessments. After *thus* annulling, it would have been competent, upon the payment of the delinquent assessment, to reinstate the assured so as to entitle him to all the rights and privileges of his policy or contract. This act of reinstating, after an absolute annulment, involves the necessity of the subsequent assent of the company. Suppose the assured is declared to be excluded and debarred, not for a certain number of days or months, but until he does a certain thing resting entirely with him and within his power, and that when he does that he shall be restored to his former or original rights and privileges. What is the difference in principle between terms thus fixed in advance and those declared at the time or subsequent to the removal of the cause leading to the order annulling the policy? And especially is this inquiry just and pertinent, when it is borne in mind that

so much of the resolution under consideration as declares the liability of plaintiff for future assessments, is but the assertion of a liability which, as he admits himself, the law and his contract would affix without such declaration. Now, if the company had declared the policy annulled, without adding other words, the plaintiff might have said, the contract is entire; my liability on the premium note ends with the destruction or annulment of the policy. And, as we construe, one object was to remove all room for controversy on this subject, and to declare in advance the conditions on which he could revive his former relations to the company, and become reëstablished in his rights and privileges. Not that he occupied strictly the relation of a *suspended* member, one whose relations ceased or were interrupted *for a time*, but that of one *excluded and debarred absolutely* unless he, by his own act, removed the bar or set aside the default which operated to exclude him from all benefits under his policy.

Again, it must not be forgotten that plaintiff, by his policy, became a member of this company. This results from the nature of the organization; the policy so recites, the articles so declare, and it is admitted in the petition. As such, he was bound to know all the rules and laws of the company. (Angell on Ins., § 146; *Simeral* v. *Dubuque Mutual, ante.*) Such companies depend almost exclusively for the payment of losses and expenses upon the premium notes of the insured. The prompt payment of assessments is necessarily essential to meet such claims and maintain the solvency and responsibility of the underwriters. Without the power to enforce prompt payment of such assessments, the company could not maintain its existence. All this the insured knows, and, as a member of the company, it is his duty to observe and comply with all proper rules made to enforce this obligation, and thus protect the company and those

2. —— mutual insurance company: notice to members.

insured from dishonor and loss.   This is his contract, and his right and liabilities are to be tested or measured by the terms of this his voluntary undertaking.   If one member can disregard these obligations so can all, and the company would cease to exist entirely, or be stripped of its ability to fulfill its contract.   A member has no right to set at defiance a rule legally promulged without suffering the penalty annexed to such violation.   He cannot, if he sustains a loss while excluded from benefit under the operation of such a rule, be heard to allege his own laches as a ground for a recovery.   He must be held to the same good faith which he would exact from the company.   And he certainly ought not to complain if he is held remediless as a consequence of his own neglect and delay, for months and months, without apparent excuse, to meet and discharge a fair and legitimate assessment.   To hold the company liable under such circumstances would offer encouragement to careless policy holders — a premium for bad faith.   Or take the facts of this case as disclosed by the record. Plaintiff was advised in March, 1863, of the action of the board, and of the consequences to result if he failed to pay the assessment.   Two months prior to this he had explicit notice of what was required of him.   Again time is given, and he knows well the penalty attached to his default. And yet for eight months he knows he is in default, is fully aware of the consequences, as far as appears makes no effort to meet his liability, and then, when the loss occurs, insists that his remedy is as complete and undoubted as though he had met promptly the very letter of his obligations.   This he does by maintaining that the act of the company is void for declaring a conditional instead of an absolute annulment of his policy.   And it is granted that if there was no power to adopt such a rule, he is entitled to the full benefit of his position.   We have seen, however, that the resolution was fairly authorized.   And in ordering

the affirmance of the judgment, we maintain the integrity of the contract, recognize no rule which improperly enlarges the powers of a corporation, and hold parties to good faith in the performance of their agreements.

Affirmed.