MARY MUNGER, Appellant, v. BROTHERHOOD OF AMERICAN YEOMEN, Appellee.

INSURANCE: Mutual Benefit—Dues and Assessments—Default in
1    Payment—Effect. The non-payment of dues and assessments *ipso facto* terminates the life of a mutual benefit certificate which provides that, "if said party . . . shall become delinquent in payments due the association . . . *then* this certificate shall be null and void," such language excluding the inference that any affirmative act on the part of the association is essential to end the efficacy of the insurance.

INSURANCE: Mutual Benefit Certificates—Strict Construction. The
2    rule that a policy of insurance is to be construed strictly does not sanction the perversion of its ordinary and natural meaning.

*Appeal from Polk District Court.—W. S. Ayres, Judge.*

Monday, November 22, 1915.

Rehearing Denied Friday, May 12, 1916.

Action on a certificate of membership in defendant association stipulating for insurance resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals. —*Affirmed.*

*H. L. Bump* and *Parsons & Mills,* for appellant.

*John D. Denison, Jr.,* and *H. C. Evans,* for appellee.

Ladd, J.—I. The defendant is a fraternal beneficiary association organized under Chapter 9, Title IX, of the Code, and acts amendatory thereto. On May 9, 1912, it issued a certificate of membership to Travers D. Munger, covering insurance on his life in the sum of $2,000, he becoming a member of the local lodge, known as Banner Homestead No. 39. On September 10, 1912, Munger died from injuries in a railroad accident. *In re Munger's Estate,* 168 Iowa 372. The beneficiaries named in the certificate were his two minor children, of whom the plaintiff is the legal guardian. Proofs of loss were submitted to the association, but it refused to pay the stipulated indemnity, for that the insured had not paid the dues and assessments for the months of June, July and August preceding his death, same being payable before the last day of each month and, as is contended, such omission *ipso facto* suspended and annulled the certificate of membership. The district court held that the evidence was such as to put in issue whether the assured had made payment for the month of June, and, as it was undisputed that he had omitted payment for July and August, directed a verdict for the defendant. This ruling was based on the conclusion that the omission of such payments alone operated to annul the certificate.

1. Insurance: mutual benefit: dues and assessments: default in payment: effect.

II.   The certificate of insurance was issued in consideration of full compliance with all the laws of the association now in force or which may hereafter be adopted and which are hereby made a part of this contract.   It also recited that it was issued and accepted "upon the following warranties, and conditions and agreements," and among them:

"That if said member shall be expelled from his Homestead or engage in an occupation prohibited by the laws of the association, or shall become intemperate in the use of intoxicating liquors, opiates, or narcotics, or shall die by his own hand whether sane or insane within one year from the date of his certificate, or feloniously by the hands of any beneficiary herein, or in consequence of his violation of law, or shall be convicted of a felony, or become delinquent in payments due this association, or shall attempt to commit suicide, or if his application or any part thereof shall be found to be untrue, then this certificate shall be null and void."

Section 154 of the by-laws relates to the same subject:

"Correspondent shall not accept either dues or assessments alone.   Each and every member notified that an extra benefit assessment has been levied and ordered by the board of directors in the manner and form hereinbefore provided, who shall fail to pay the same on or before the last day of the month of notice or who shall fail to pay the regular monthly payment, including his dues, on or before the last day of each month, or who shall engage in any of the prohibited occupations mentioned in Section 112 of these by-laws, or who shall become addicted to the intemperate use of intoxicating liquors, opium or morphine so far as to impair his health, or who shall be convicted of a felony, or who shall attempt to commit suicide, then the certificate held by said member shall by such act or acts become and be absolutely null and void, and all payments made thereon shall be thereby forfeited."

Provision for reinstatement is found in Section 135:

"Any member suspended for the nonpayment of monthly payments, fines or dues, if not engaged in any of the prohibited

occupations mentioned in Section 112 hereof, may be reinstated by payment within 60 days from the date of suspension of all arrearages of any kind, including current monthly payment and all fines, dues and payments for which he would have been liable had he remained in good standing; provided, however, that he be in good health at the time of reinstatement; provided further that the receipt and retention of such payment or dues in case the suspended member is not in good health, or is engaged in any of said prohibited occupations, shall not have the effect of reinstating said member or entitling him or his beneficiaries to any rights under his benefit certificate. If suspended more than sixty days and less than six months, he shall be reinstated upon a form provided for by the board of directors, and if the applicant be approved by the chief medical director, he shall be reinstated upon the payment of three monthly payments, and if a member is suspended more than six months and desires to re-enter the association, he must do so as a new member."

By Section 63 of the by-laws, it is provided that the chief correspondent "shall, as soon as he has knowledge of suspension, mail to the suspended member a notice of suspension, and instruct him how to become reinstated, which notice, however, shall not be construed as part of the process of suspension."

The language of the certificate is such as to exclude the inference that any affirmative act on the part of the company was essential to end the efficacy of the insurance.

Omitting the other matters, the condition of the certificate reads:

"If said party . . . shall become delinquent in payments due the association . . . then this certificate shall be null and void."

According to Webster, "then" means: (1) "At that time. (2) Soon; afterwards; immediately. (3) At another time; later. (4) Existing, acting at or belonging to the time mentioned;" and, when used as a conjunctive: "In that case; in

consequence; as a consequence; therefore; for this reason.''
Evidently the word was employed as a conjunctive and has
the meaning last mentioned, though it is not very material
which is accorded it; for, in any event, the sentence as a
whole in the plainest possible language declares that, upon
delinquency in payments, the certificate shall be (not
''become'') null and void. In other words, the invalidity of
the certificate results from the delinquency in payments. This
construction is confirmed by Section 154 of the by-laws, which
declares that:

''Each and every member . . . who shall fail to pay
the regular monthly payment including his dues on or before
the last day of the month . . . then the certificate held by
said member shall by such act or acts become and be abso·
lutely null and void and all payments made thereon shall be
thereby forfeited.''

Evidently, what is meant by ''act or acts'' is the omission
to make the payment, and it is said that by this the certificate
shall ''become and be absolutely null and void.'' This excludes
the necessity of any affirmative act on the part of the associa-
tion, for it defines by what (omission to pay) the certificate
is rendered null and void. Moreover, it is made void thereby,
not merely to become void. In *Brooks v. Conservative L. Ins.
Co.,* 132 Iowa 377, the certificate provided that:

''The member, failing to pay assessments and dues within
30 days after the day when due, 'shall be suspended and his
certificate become null and void, and all rights and benefits
which may have accrued to the insured or his beneficiary shall
be forfeited to the association.' And, further, that 'a member
who has been suspended for nonpayment of his dues and
assessments may be reinstated.' ''

As the certificate was not declared to be void in conse-
quence of the omission, but that the member shall be suspended
and it become void (at some future time), it was held that
some affirmative act on the part of the company was essential
to its becoming void, inasmuch as these provisions were to be

construed most strongly against the company. There, the fair inference from the language employed was that something was to be done in the future in order to suspend the member and render the certificate null and void.

In *Jelly v. Muscatine City and County Mut. Aid Society,* 120 Iowa 689, the provisions are simply that the member failing to pay for 15 days shall be suspended and may be reinstated, and we held that some affirmative action on the part of the association was contemplated before the certificate holder should become suspended. Other decisions cited by appellant construe similar provisions, and in none are to be found conditions like those in the certificate and by-law of the defendant association, clearly and as definitely as is possible declaring the provisions with reference to failure to pay as exacted self-executing.

The member ceases to be such until reinstated as permitted under Section 135, and this exacts some affirmative action on the part of the association; for it is said that, upon compliance therewith, "he may be reinstated." No effort in the direction was made, and, even though notice were required by Section 63, this would not have been "a part of the process of suspension." That conditions declaring a certificate or policy of insurance *ipso facto* void upon the omission to pay dues, assessments or premiums at the time exacted are valid, is not questioned. See *Brown v. Grand Council Northwestern Legion of Honor,* 81 Iowa 400; *Fee v. National Masonic Assn.,* 110 Iowa 271.

Cases construing similar provisions self-executing will be found collected in 29 Cyc. 181, *et seq.* Though the language employed in the contract is to be construed strictly against the insurer, its ordinary and natural meaning is not to be perverted. No one can read the certificate and by-law of the defendant association without understanding the consequence of nonpayment to be precisely as was held by the trial court.

2. INSURANCE: mutual benefit certificates: strict construction.

III.   Some claim is made that nonpayment of dues and assessments for July were waived; but, as there is no such contention concerning the omission to pay those of August, this need not be considered.—*Affirmed*.

DEEMER, GAYNOR and SALINGER, JJ., concur.