FEDERAL LAND BANK of Omaha, Appellee, v. FARMERS MUTUAL INSURANCE ASSOCIATION, Appellant.

H. R. DAVIS, Appellee, v. FARMERS MUTUAL INSURANCE ASSOCIATION, Appellant.

No. 42373.

MARCH 6, 1934.

Lee R. Watts, for appellant.

H. M. Towner, and Harvey Johnsen, for appellees.

KINDIG, J.— There is but a single question involved in this litigation. It has to do with whether a policy of fire insurance was canceled or suspended at the time a fire destroyed the building covered by the policy.

On July 21, 1931, the defendant-appellant, the Farmers Mutual Insurance Association of Adams and Adjoining Counties, a corporation, executed to the plaintiff-appellee H. R. Davis a fire insurance policy for $3,200, covering a house on land owned by Davis in Adams county, Iowa. While, or perhaps before, the appellee H. R. Davis thus held the fire insurance policy, he mortgaged to the plaintiff-appellee the Federal Land Bank of Omaha, a corporation, the land on which the insured house was located. A fire destroyed the house on September 16, 1932. So, on September 17 thereafter, the appellee H. R. Davis notified the appellant of the loss and damage. But the appellant, through its agents, refused to assume the loss on the theory that, because certain assessments had not been paid by Davis, the fire insurance policy was suspended. At the time the appellee Davis notified the appellant of the fire loss, he tendered to the appellant the unpaid assessment, but such tender was refused by the appellant. Thereafter, on April 3, 1933, the appellee Davis assigned and delivered to the appellee the Federal Land Bank of Omaha the aforesaid policy together with all claims for the fire loss thereunder.

Therefore, on July 27, 1933, the present actions were commenced by the appellee Davis and the appellee the Federal Land Bank of Omaha to recover from the appellant the amount of the loss under the aforesaid policy. When the trial commenced, the parties in the two suits entered into a stipulation wherein it was agreed that the two causes of action should be tried together to the court without a jury. This was done, because, as said in the beginning, there is but a single legal question involved. The facts, so far as material, are not in dispute.

It is admitted by the appellant that the policy existed, as claimed

by the appellees. Likewise, the appellant admits that the building in question was destroyed by fire at the time claimed by the appellees. Both the appellant and the appellees agree that the appellant is liable to the appellees for the loss occasioned by the fire if the insurance policy was not suspended or canceled at the time of the fire. Consequently, the dispute between the parties relates only to the question of whether the policy was suspended or canceled at the time of the fire.

According to the policy, the appellant agreed to indemnify the appellees "against loss or damage by Fire or Lightning, for five years, from noon of the 21st day of July, 1931, to noon of the 21st day of July, 1936, (or) *until cancellation of policy by the Assured or the Association, as provided by the Articles of Incorporation and By-laws,* on the property specified below, owned and valued by the Assured and situated on SE Quarter, Section 21, Jasper Township, Adams County, Iowa, viz.: On frame dwelling 1½ stories, 20x24 feet; And frame wing 1 story 18x22 feet; on frame barn 20x36 feet; And addition 18x36 feet; grain, hay, and farm implements." (Italics supplied.)

As before indicated, the fire in question occurred during the five-year period named as the term of the policy. Nevertheless it is claimed by the appellant, as before indicated, that the policy was suspended at the time of the fire because the appellees had not paid the assessments due. A basis for this conclusion exists, the appellant declares, because of section 9 of its by-laws. That section, so far as material, reads as follows:

"This Association shall not be liable for any loss or damage, unless otherwise provided by agreement in writing endorsed upon or added to the policy. * * * (f)—if the insured shall fail to pay any written obligation given to the Association for the premium or any assessment when due; provided the Association shall have given the insured notice as required by law."

The appellant claims that it gave the notice required by the by-law, and therefore the policy was suspended because the appellees did not, in accordance with the notice, pay the assessment due. During our discussion, it is assumed, without deciding that clause "f" of section 9 of the by-laws in question covers an assessment when the obligation therefor is not in writing. Under this assumption, it is next important to determine whether, under the provisions

of the policy, including the appellant's constitution and by-laws, there is a provision for suspension of the policy as distinguished from the cancellation thereof. It is argued by the appellant that section 9 of the by-laws, just quoted, is authority for such suspension. This provision of the policy, the appellant argues, is self-executing, and therefore, after the notice is given, the policy automatically becomes suspended during the period of the appellees' delinquency.

On July 1, 1932, the appellant served upon the appellee Davis an advance notice that an assessment of $11.20 would be due upon the policy August 1, 1932. Moreover, that notice advised Davis to keep his policy in force by paying the assessment on or before the due date. Also the notice informed Davis that policies generally were not in force if in arrears. There is nothing in the notice, however, to indicate that the appellant would cancel or suspend the policy at any time on any basis. Nor is there anything in the notice to indicate that in any event the policy would be canceled or suspended. After the first notice, the appellant again, on August 11, 1932, mailed the second notice to Davis. Such second notice informed Davis that the assessment of $11.20, due August 1, 1932, was still unpaid. Furthermore, the second notice contained the following provision: "Please keep in mind that your policy is not in force while past due assessments are unpaid."

Again, it is apparent that this notice contained no declaration for a cancellation of the policy, nor did it provide that the same would be suspended. In fact, the second notice referred, not to what would be done, but, in fact, to what already had been done. Obviously the second notice did no more than indicate the appellant's construction of the insurance contract. Such construction would, in no event, bind the appellees. They would be bound only by the actual terms of the contract. Wherefore if, under the terms of the contract, there was no suspension of liability on the appellant's part merely because the assessment was not paid by the appellees when due, the appellant's construction of the contract to the contrary would not change the actual terms thereof.

Nevertheless, it is contended by the appellant that it is not liable on the policy in question because, after the notices above named, the appellees failed to pay the assessments. The suspension of a policy is not synonymous with the cancellation thereof, unless,

by agreement or otherwise, the two terms are to be considered as one. Early v. Bremer County Farmers Mutual Fire Insurance Association, 201 Iowa 263, 207 N. W. 117; Hart v. Farmers Mutual Fire & Lightning Insurance Association of Winneshiek County, 208 Iowa 1020, 226 N. W. 777. If, however, the policy provides for the suspension thereof upon conditions named therein, the provision will be enforced. Likewise the provision for the suspension may be such as to be self-executing and therefore, when the agreed event happens, the suspension automatically will become operative without any affirmative act on the part of the insurance company. Early v. Bremer County Farmers Mutual Fire Insurance Association, supra; Hart v. Farmers Mutual Fire & Lightning Insurance Association, supra; Whitlow v. Sovereign Camp, Woodmen of the World, 199 Iowa 579, 202 N. W. 249; Munger v. Brotherhood of American Yeoman, 176 Iowa 291, 154 N. W. 879; Beeman v. Farmers Pioneer Mutual Insurance Association, 104 Iowa 83, 73 N. W. 597, 65 Am. St. Rep. 424.

Everything, of course, depends upon the nature of the contract. When the policy provides that the delinquency is to be effective only upon some affirmative act on the part of the insurance company, then the provisions of the policy are not self-executing. Compare the cases above cited with Marden v. Hotel Owners Insurance Co., 85 Iowa 584, 52 N. W. 509, 39 Am. St. Rep. 316, and Nolte v. Security Insurance Co., 208 Iowa 716, 224 N. W. 50. Conceding, without determining, for the purpose of this discussion, that section 8959 of the 1931 Code, as argued by the appellant, does not apply to chapter 406 of that Code, under which the appellant is organized (Hart v. Farmers Mutual Fire & Lightning Insurance Association, supra), yet Marden v. Hotel Owners Insurance Co., supra, and Nolte v. Security Insurance Company, supra, by analogy are in point on the proposition that if the insurance company has an affirmative act to perform before a suspension becomes operative, then such suspension is not self-executing, under the principle announced in Early v. Bremer County Farmers Mutual Fire Insurance Association, supra; Whitlow v. Sovereign Camp, Woodmen of the World, supra; Munger v. Brotherhood of American Yeoman, supra, and Beeman v. Farmers Pioneer Mutual Insurance Association, supra.

So, it is essential now that we determine whether, in the case at bar: First, there is a provision in the policy under consideration

for the suspension, as distinguished from the cancellation, of the policy; and, second, whether section 9 of the by-laws provides for a self-accomplishment of the appellant's non-liability, as distinguished from the requirement of an affirmative act on the part of the appellant to bring about such nonliability.

"A policy of mutual insurance is not * * * suspended by the failure of insured to pay an assessment when due, unless it is so provided by the statute, or by the charter or by-laws of the company, or by a condition in the policy itself." 32 Corpus Juris, 1300, 1301.

Also it is said in 14 Ruling Case Law, p. 1008, section 186, under XIII:

"As in the case of all contracts, neither party to an insurance contract can withdraw therefrom, or cancel the same, without the consent of the other."

This is fundamental. A valid contract, when once entered into, remains in force until terminated by performance, if performance has not been excused by some method authorized by law or equity. On the basis of that principle, the suspension of the policies in the cases cited earlier in this opinion was provided for and authorized in the insurance contracts themselves. When the suspension of the policy is not authorized by statute, the constitution or by-laws of the insurance company, or by the insurance certificate, there can be no suspension of the policy so far as the authority therefor arises from the provisions of the contract itself. There is no claim in the case at bar that the authority of the appellant to suspend the insurance policy is based upon anything except the language of the policy. Our discussion, therefore, will be limited to the provisions of the policy. As the provisions of the policy are read, it becomes self-evident that there is no authority therein to suspend the contract for the nonpayment of assessments, unless such power may be found in section 9 of the by-laws, before quoted. Section 9 of the by-laws does not in express language contain a provision for the suspension of the insurance contract for the nonpayment of assessments. Perhaps, under proper facts and circumstances, the suspension of an insurance contract might be authorized therein without the use of the express word "suspension". But when section 9 of the by-laws is interpreted, it must be read in conjunction with the rest

of the contract. This is expressly provided in section 9 of the by-laws.

To illustrate the thought, it is said in section 9 of the by-laws that this "association (appellant) shall not be liable for any loss or damage, (when assessments are not paid) *unless otherwise provided by agreement in writing endorsed upon or added to the policy.*" (Italics supplied.) The policy includes not only the certificate, but also the articles of incorporation and the by-laws of the appellant company. Section 9033 of the 1931 Code. With that thought in mind, it is important to further consider here the excerpt from the insurance agreement first above quoted. According to that excerpt, the appellant insured the appellees against loss or damage by fire or lightning for five years, or until *cancellation* of the policy by the assured or the association, as provided by the articles of incorporation and by-laws. Does not this provision indicate, in accordance with section 9 of the by-laws, that the appellant is to be liable even though the assessment has not been paid? Nowhere in the certificate is there anything said about the suspension of the insurance contract, as distinguished from the cancellation thereof. It is important to know that the insurance contract did not provide that the insurance was to extend for a five-year period unless sooner canceled or suspended. On the other hand, the provision is that the insurance contract shall cover the five-year period unless sooner canceled. In no place in the certificate, articles of incorporation, or by-laws is there a provision for the suspension of the insurance contract. There is, as above indicated, a provision for the cancellation thereof. Without the provision for the suspension of the insurance contract, there can be no suspension, as previously indicated. Consequently, the only method of terminating the insurance contract before the expiration of its term is by the cancellation thereof. So, section 9 of the by-laws, above set forth, must necessarily provide one reason at least for the cancellation of the insurance contract. If such section of the by-laws does not refer to the cancellation of the insurance contract, but to some method of suspending it, then the by-law immediately becomes inconsistent with the provisions of the insurance contract setting forth the term thereof, as before stated.

Assuming that the insurance contract is to insure the appellees' property for a period of five years unless sooner cancelled, it contains no provision for the suspension, for if the insurance contract

is suspended for some portion of the five-year period it does not insure the appellees' property for five years. That there is a distinction between the cancellation and the suspension of an insurance contract has been fully demonstrated previously in this discussion. Section 9 of the by-laws, therefore, can refer to nothing else except the former provision in the insurance contract for the cancellation thereof. No attempt was made by the appellant in this case to cancel the insurance contract. Section 9054 of the 1931 Code provides:

"Any policy of insurance issued by any association operating under the provisions of this chapter may be cancelled by the association giving five days' written notice thereof to the insured."

The notice named in that section of the statute must be of the cancellation. There can be no cancellation without the notice of the cancellation. In the case at bar, the appellant did not serve notice of cancellation, but simply indicated that the assessment was due. It is true, of course, that the appellant said that the insurance contract would not be in force unless the assessment was paid, but that did not refer to a cancellation. Manifestly the insurance contract would be in force unless it was canceled. Such being the situation, the result could not be altered because the appellant had some other view of the law relating to the enforcement of the contract. Possibly the appellant thought that the contract would not be in force after the appellees' delinquency even if there were no cancellation. But such erroneous understanding on the appellant's part would not bring about a cancellation if the statutory notice to accomplish the same was not given. See Marden v. Hotel Owners Insurance Co., supra. This, in effect, is conceded by the appellant. It is not asking that the insurance contract be reformed.

Consequently, because of the foregoing facts and circumstances, when, in section 9 of the by-laws, the appellant provided for its nonliability upon the giving of notice, as required by law, it must have referred to the notice above named in section 9054 of the statute, because no other notice is provided in the statute or in the insurance contract, including the articles of incorporation and the by-laws. This by-law, therefore, is not self-executing and did not become operative until the notice required by section 9054 of the 1931 Code was duly given. Because, then, the statutory notice of cancellation had not been given, the insurance contract was in full

force and effect at the time of the fire in question, and the appellees are entitled to recover thereon. Then when the tender of the assessments was made by the appellees, the appellant should have accepted the same.

The district court properly allowed the appellees to recover, and its judgment must be, and hereby is, affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, ALBERT, and DONEGAN, JJ., concur.