M. E. Olson, Appellant, v. Agricultural Mutual Insurance Association of Des Moines, Appellee.

No. 46431.

April 4, 1944.

Breen, Breen & McCormick, of Fort Dodge, for appellant.

Don Carlos & Don Carlos, of Greenfield, for appellee.

Mantz, J.—In this action M. E. Olson, plaintiff, demanded judgment against the Agricultural Mutual Insurance Association, defendant, on account of claimed hail losses to his growing crops on July 9 and 10, 1941, under a policy of hail insurance then held by him in the defendant association. Defendant admitted the loss and the notice thereof but denied liability, claiming that at the time of the loss the policy sued upon was under suspension, according to its terms, on account of the failure of the plaintiff to pay an assessment due on June 20th and delinquent on July 1, 1941. The jury was waived; trial was had to the court, resulting in a dismissal of the petition of plaintiff. The court held that at the time of the loss the policy was suspended by reason of the failure of the plaintiff to pay the assessment due June 20th and past due July 1, 1941. Plaintiff appealed.

The facts are not in dispute. The appellee by its answer raised the one issue that the policy sued upon was in a state of suspension because of the nonpayment of the assessment that became past due on July 1, 1941. The lower court sustained this defense.

The appellant in his brief stated:

"Obviously, the questions raised in this appeal are purely matters of law dealing solely with the fact as to whether or not the policy had been legally suspended at the time the loss occurred."

Appellee, a mutual insurance association, located at Des Moines, Iowa, was organized in 1934 under the provisions of chapter 384, Title XIX, and chapter 406, Title XX, of the 1931 Code. Since that time it has been engaged in the business of writing hail insurance on growing crops under what is known as the mutual-assessment plan, wherein each policyholder is a member of the association and the losses incurred and expenses of operation are met by assessments against the various members of the association.

The policy held by appellant was issued to him in June 1940, and by its terms was to expire on December 31, 1944. Attached to it was a copy of the application of appellant and also copies of the articles of incorporation and the bylaws of the association. Article VI of said bylaws deals with the scheduled payment of policy assessments. Section 1 of said articles provides that an advance payment of one half of the maximum assessment will be due at the office of the secretary of the association on June 20th of each year, and will be past due at twelve o'clock noon July 1st following. Said section further deals with the assessment to be made later in the year in which adjustments will be made of the total assessments for the year. Section 1, Article VII, of the bylaws, under the head of "suspension," provides that if a member fails to pay his assessment by the default date specified in Article VI, section 1, of the bylaws, if there shall be default of any kind, or default for any reason whatsoever in the payment of the check given for either a policy fee or an assessment when the same is due and/or presented for payment, he shall be in default

and stand suspended and shall not be entitled to recover for any loss occurring during the period of the suspension. Section 2 of said Article VII provides that such suspension shall not preclude the association from assessing the member his pro rata share required to pay losses and expenses accrued prior to the date of the suspension during the current year.

In the application which the appellant signed, a copy of which is attached to the policy issued to him, he states that he agrees to be governed by the articles of incorporation and bylaws of the association and to pay all just assessments on the insurance represented in his policy in force during the season for which the assessment is levied. Two notices were mailed by appellee advising him of an assessment and requesting him to pay the same on June 20, 1941, and that the same would be past due on July 1, 1941.

Appellant admitted that he received both of these notices. In addition, the appellant admitted as a witness that sometime earlier in the year of 1941, an agent of the appellee wanted him to pay the June assessment and thereby secure for himself a ten per cent discount. Appellant stated that at that time he knew there was a July 1st assessment.

Appellant did not pay the June assessment and the same became past due, according to the terms of the bylaws above quoted, on July 1, 1941, at twelve o'clock noon. It will be seen that by the terms of the policy it became suspended on that date and this suspension continued up to and including the time of the hailstorm on July 9 and 10, 1941.

There is nothing in the record in this case to indicate that the policy of hail insurance held by appellant was canceled or forfeited or that the appellee made any step in that direction. As a matter of fact, outside of sending the two notices to appellant, appellee did nothing. Thus it will be seen that the whole controversy is whether the policy was suspended after July 1, 1941.

The appellant does not argue that he did not have notice of the fact that the assessment for June would be past due on July 1, 1941. In fact, he admits he had such knowledge.

Boiled down, it is the claim of appellant that the policy

held by him could not be suspended or forfeited except by the giving of a thirty-day notice, as provided in section 8959 of the Code. It is the contention of appellant that the requirement of the giving of thirty days' notice applies to policies issued under the provisions of both chapters 404 and 406 of the Code of 1931, and practically all of the discussion and argument by appellant is directed to that matter.

It should not be forgotten that the policy held by appellant was one issued by a mutual insurance association, under the terms of which he was required to be a member. It was organized to insure property against certain risks. The only method of paying losses and expenses of the association was from assessments paid by the various members.

Regarding the matter of assessments in mutual companies and the payment of the same, this court, in Corey v. Sherman, 96 Iowa 114, 131, 133, 64 N. W. 828, 834, 32 L. R. A. 514, used the following language:

"The company, in issuing assessment policies, required the payment of one assessment when the policy was issued. That practice was authorized by the section of the by-laws quoted, and was important and proper to provide funds for the current necessities of the company, and to prevent insuring property without compensation, and was not a violation of the law which required it to do a mutual business. The obligation of the assured remained subject to assessment, and the mutuality of the pledges of the holders of the assessment policies was not in any manner affected by the payment of the first assessment. * * *

"It is well settled that the members of a mutual insurance company are presumed to have knowledge of its articles of incorporation and by-laws. Hobbs v. Association, 82 Iowa, 112 (47 N. W. Rep. 983); Walsh v. Insurance Co., 30 Iowa, 144; Simeral v. Insurance Co., 18 Iowa, 319. See, also, Lucas v. Transfer Co., 70 Iowa, 546 (30 N. W. Rep. 771); May, Ins. section 552; 2 Wood, Ins. section 538."

Appellant has indulged in a somewhat extended argument dealing with the matter of the proper construction to be given to the statutes which he claims apply in this case. He suggests that the matter is much involved, difficult to understand, and not at

all free from doubt. In so doing he has gone at some length into the legislative history of mutual insurance associations and seeks to show the various steps the legislature has taken concerning such organizations. He argues that while the Code of 1931 and subsequent Codes have been divided into various chapters dealing with the subject of mutual insurance associations, yet all of the various parts thereof should be taken into consideration in making a proper construction. He calls attention to the record, which shows that appellee was organized under the provisions of chapter 384, and claims, as a consequence thereof, this association comes under the provisions of chapters 404 and 406 of the Code of 1931 so far as termination of policies is concerned.

Chapter 384 might be called the "parent" chapter, being a somewhat general statute dealing with insurance other than life. Section 8959 of chapter 404 deals with the forfeiture or suspension of policies of insurance. Section 8960 deals with the cancellation of policies. We do not deem it necessary to go into a lengthy discussion of the legislative history of the organization and operation of mutual insurance associations. Such history does show that at an early period the lawmakers of this state recognized the benefits of and need for insurance upon property. They further recognized the value of mutual assessment insurance associations as a means of keeping the cost thereof to a minimum and enabling members of such associations to have a voice in the control and management thereof. This history shows that in the passing years the lawmakers broadened and enlarged the field and made certain enactments growing out of the experience, the trials and errors of such concerns.

The error relied upon by the appellant for reversal is as follows:

"The court erred in holding that at the time of the loss that the policy was in a state of suspension and that there was no liability to plaintiff for the loss."

Appellant presents this claim from several angles but it all sums up to one proposition, and that is, Was there any liability under the policy at the time of the loss?

It is to be kept in mind that there is no claim made of cancellation or forfeiture of the policy held by appellant. The sole claim made by the appellee is that the policy was under suspension at the time of the loss. The policy held by appellant for more than a year prior to the loss, in the bylaws attached thereto, contained an express provision that a failure to pay an assessment levied would suspend the operation of the policy and that during the period of suspension there was no liability thereunder. We are thus confronted with the question as to the force and effect of such provision. Under the law and the decisions of this court we think that such provision is valid and enforceable.

In the case of Hart v. Farmers Mut. F. & L. Ins. Assn., 208 Iowa 1020, 226 N. W. 777, such an issue was presented to the court. In that case plaintiff, Hart, brought suit on a policy for loss by fire and the defense was that the policy was in suspension on account of the failure of the member holder to pay his assessment. Hart claimed that no notice was given him of forfeiture, as provided in section 8959 of the Code of 1927. This court held adversely to such claim, holding that the procedure for forfeiture or suspension as set forth in that section did not apply to policies issued by mutual assessment companies organized under chapter 406 of the Code.

Prior to the holding in the Hart case, supra, the Thirty-ninth General Assembly had enacted chapter 120, which in express terms repealed chapter 5, Title IX of the Code and made an enactment entitled, "Mutual Insurance Associations." This enactment in part now appears in chapter 406 of the Code of 1931. It seems evident that the legislature was seeking to place in one enactment the various detailed provisions dealing with such organizations. As before stated, appellee organized and operated under the provisions of such chapter and the policy issued to appellant so recited. Under the terms of section 1 of that chapter (120, Thirty-ninth General Assembly) any number of persons might incorporate and then could enter into "contracts with each other" for various kinds of insurance, including loss or damage by hail. There is no statutory provision therein with reference to the suspension of the policies of the members.

However, it does provide the method for cancellation by either the policyholder or the association. This enactment (section 1, chapter 120) further provided:

"For the purpose of this protection these contracts of insurance shall be subject only to such provisions as are contained in this chapter and shall consist of: first, an application on blanks furnished by the association and signed by the insured or his representative, which may contain in addition to other provisions * * * and agreement to be governed by the articles of incorporation and by-laws in force at the time the policy is issued * * *."

In this case the application referred to was introduced in evidence. It was signed by the appellant and over his signature there appears the following:

"I further agree to be governed by the articles of incorporation and by-laws of the association, and to pay all just assessments on the insurance represented in my policy in force during the season the assessment is levied."

Thus it would seem that the legislature was making provision for contracts between members of such associations. There is no requirement therein that the policyholder is entitled to a thirty-day notice to suspend the operation of his contract. The legislative act contemplated that such matter was to be dealt with in the contract as authorized by the bylaws.

In Federal Land Bank v. Farmers Mut. Ins. Assn., 217 Iowa 1098, 1101, 253 N. W. 52, 54, this court had before it the issue raised as to whether the policy had been canceled or suspended. This court held that to cancel the statute must be followed but that suspension was governed by the provisions of the bylaws. In that case, as in the present case, there was a failure to pay the assessment. We quote from the language of the case:

"The suspension of a policy is not synonymous with the cancellation thereof, unless, by agreement or otherwise, the two terms are to be considered as one. Early v. Bremer County Mutual Fire Insurance Association, 201 Iowa 263, 207 N. W. 117; Hart v. Farmers Mutual Fire & Lightning Insurance Association of Winneshiek County, 208 Iowa 1020, 226 N. W. 777. If, however,

the policy provides for the suspension thereof upon conditions named therein, the provisions will be enforced. Likewise, the provision for the suspension may be such as to be self-executing and therefore, when the agreed event happens, the suspension automatically will become operative without any affirmative act on the part of the insurance company.''

This case cites, as authority for such holding, the following: Early v. Bremer County Farmers Mut. F. Ins. Assn., supra; Hart v. Farmers Mut. F. & L. Ins. Assn., supra; Whitlow v. Sovereign Camp W. of W., 199 Iowa 579, 202 N. W. 249; Munger v. Brotherhood of American Yeomen, 176 Iowa 291, 154 N. W. 879; Beeman v. Farmers Pioneer Mut. Ins. Assn., 104 Iowa 83, 73 N. W. 597, 65 Am. St. Rep. 424. Following the citations, the court continues:

''Everything, of course, depends upon the nature of the contract. When the policy provides that the delinquency is to be effective only upon some affirmative act on the part of the insurance company, then the provisions of the policy are not self-executing.''

Under the heading of ''Mutual Insurance'' we quote from 32 C. J. 1302:

''A provision in a contract of mutual insurance or in the charter or by-laws of the mutual company that a failure of insured to pay a premium or assessment when due or within a specified time after notice shall avoid the policy is valid and a violation of it, unless waived or excused, will constitute a good defense to an action on the policy. Under other provisions which are also regarded as valid and operative the protection of the policy may be suspended during such period as the member is in default of payment of a premium or assessment when due * * *.''

In support of the above there are cited cases from many jurisdictions, and include the following from our state: Greeley v. Iowa State Ins. Co., 50 Iowa 86; Beeman v. Farmers Pioneer Mut. Ins. Assn., 104 Iowa 83, 73 N. W. 507, 65 Am. St. Rep. 424; Coles v. Iowa State Mut. Ins. Co., 18 Iowa 425.

In the recent case of Elliott v. Farmers Mut. F. Ins. Assn., 233 Iowa 766, 10 N. W. 2d 556, this court had before it the issue as to whether a policy was effective during the period when it was suspended for nonpayment of assessment. We there held that the parties were operating under a contract and that both had certain obligations; that the policy became suspended on the failure of the holder to pay the assessments due thereon as provided in such contract. In the case of Jelly v. Muscatine City and County Mutual Aid Soc., 120 Iowa 689, 691, 95 N. W. 197, 198, 98 Am. St. Rep. 378, this court said:

"It may be conceded that a mutual benefit society may so provide in its contracts of membership that a mere failure to pay assessments, without more, shall operate ipso facto to forfeit all the rights of the delinquent member."

In the case of Bosworth v. Western Mutual Aid Soc., 75 Iowa 582, 583, 39 N. W. 903, 904, there was an action brought to compel defendant to levy an assessment to pay a claimed death loss. The defense was that the policy sought to be enforced was void on account of failure to pay an assessment. The court found that there was a "clear default in the payment of such assessments." In affirming the lower court, this court said:

"* * * that, if the deceased failed to pay the assessments within the time stated, the certificate should be void. The parties must have meant precisely what is said. There is nothing to construe. There is no other language in the contract or articles of incorporation or by-laws of defendant which has any material bearing on this question, or which qualifies or restrains the meaning of the word 'void,' as used in the certificate."

See, also, Garlick v. Mississippi Valley Ins. Co., 44 Iowa 553; Watrous v. Mississippi Valley Ins. Co., 35 Iowa 582; Nedrow v. Farmers Ins. Co., 43 Iowa 24; Munger v. Brotherhood of American Yeomen, 176 Iowa 291, 154 N. W. 879.

We think that the principles laid down by the foregoing authorities are controlling in this case. Appellant had a contract with the appellee whereby and wherein he became a member of the appellee association. His rights and obligations were therein set forth. That contract provided that an assessment to

pay current losses and expenses be made by June 20th of that year and that if he failed to do so by noon of July 1, 1941, the contract would be suspended and during the period of suspension there was no liability on the part of the appellee. Under the above holdings we think such provision of the bylaws was what may be termed self-executing. However, the record shows that prior to July 1st, an agent of the company had requested appellant to pay the assessment and thereby secure a discount, and in addition, on June 20th and again on June 27th, appellee had advised appellant that the assessment would be past due at twelve o'clock noon July 1, 1941. The bylaws attached to the policy provided that if a member failed to pay his assessment by the dates specified therein and in Article VI, section 1, he should be in default and stand suspended and would not be entitled to recover any loss occurring during the period of suspension.

As a witness appellant said, "I knew that there was a July 1st assessment." Also, " * * * I figured I had the days of grace, and it all slipped my mind." It is quite evident from the record that appellant gave little attention to the contract obligation until after the loss. He makes no claim of waiver or that he was in any way misled as to the provisions of his policy and the bylaws attached thereto or that the assessment made was in any way invalid. He knew of his membership; also that losses and expenses of operation were paid from the assessments. He knew of the assessment of June 20th. He admits that he failed to comply with the provisions of the policy and makes no showing that the company did anything tending to mislead him in the matter. The unfortunate loss took place while his policy was suspended.

Numerous authorities have been cited by the appellant. We have considered the claims he makes thereunder. We have also considered the claim which appellant makes as to applicability of the statutes governing in the consideration of this case. We cannot agree with his contentions as to the statutes to be applied. Neither do we agree that there exists any substantial conflict between the provisions of the policy and the bylaws of the association.

We are here dealing with a plain contract entered into between appellee and appellant. Appellant failed to perform certain necessary requirements therein and according to its terms it became suspended. No rule of the statute was violated. Appellee did what the statute authorized it to do. The appellant has penalized himself by his negligence and neglect. The decisions of this court sustain the contentions of the appellee. The court below ruled that there was no liability under the policy at the time the loss occurred. We concur in that finding and the case is affirmed.—Affirmed.

All JUSTICES concur.